JOSEPH P. BERTRAND, as Administrator of the Estate of WILFRED L. BERTRAND, Deceased, Respondent, *v.* DELAWARE AND HUDSON RAILROAD CORPORATION, Appellant.

Third Department, December 28, 1943.

*Joseph Rosch,* attorney (*P. J. Tierney* and *Raymond L. Carr* of counsel), for appellant.

*Andrew W. Ryan,* attorney for respondent.

CRAPSER, J.  The action was tried before the court and a jury at the Plattsburgh, Clinton County, Trial Term, commencing on November 17, 1942.

The plaintiff's intestate, a man twenty-five years of age, at about 2 A. M. on the morning of February 5, 1942, was riding on the rear seat of an automobile owned and operated by the late Francis Brennan, when the automobile collided with a freight train at a grade crossing of the defendant-appellant's railroad on Pratt Street in the village of Rouses Point.

The tracks of the appellant run generally north and south as they cross Pratt Street, there are three sets of tracks crossing Pratt Street which are designated as the " West Track," " Middle Track " and " Main Line Track."  The " Main Line Track," so called, is the easternmost track and the track on which the freight train was proceeding at the time of the accident.

Pratt Street runs generally east and west in the village of Rouses Point. The roadway is of two-strip concrete construction with shoulders paved with blacktop.

The crossing, between the hours of 6 A. M. and 11 P. M. is protected by crossing gates which are operated from a tower located at the southwest corner of the crossing. These gates were not in operation at the time of the accident, the operator having gone off duty at 11 P. M. On the south arm of the crossing gates on the east side the defendant had placed a reflector. The defendant had caused to be erected a sign advising the public as to the hours during which the gates were not in operation. The sign was affixed to a pole located on the northerly edge of the highway and some twenty-three and a half feet from the nearest rail of the defendant's track. This pole also served to suspend an electric street light with a candle power of 250 watts, located in the center of the highway at a level of fifteen and five-tenths feet above the pavement, which light was burning at the time of the accident.

Pratt Street as it approaches the defendant's tracks from the west is practically straight for over a half mile. At a point some 300 feet west of the crossing there was located a standard railroad disc sign. The railroad crossing was in plain view to an approaching traveler on the highway at all points along Pratt Street from a point at least one half mile westerly thereof.

At Rouses Point the Rutland and the Grand Trunk (Canadian National) railways have interchange connections with the defendant's railroad. The defendant maintains a large interchange and classification yard there.

On the morning of this accident and at the time thereof the defendant was moving a train of thirty-two freight cars and two cabooses which was being pushed by a locomotive over the crossing to a point where the cars of the train were to be delivered to the Canadian National Railway.

On the top of the head or lead car was standing a trainman with a lighted lantern and some eight cars behind him was a second trainman with a lighted lantern which was being waved in a circular motion. The freight car with which the automobile collided was only one or two cars away from the car on which the second trainman mentioned was standing.

As the train proceeded in a northerly direction and approached the crossing two long and two short blasts on the locomotive whistle were sounded by the engineer. The automobile crashed into the side of the tenth car as it moved over the crossing.

Francis Brennan was driving the automobile and seated by him in front was another young man by the name of John Poirier. All three young men were residents of Rouses Point, the deceased having been born and brought up there. The driver, Francis Brennan, was employed as a locomotive fireman and in order for him to reach and return from his work he had to cross the Pratt Street crossing twice daily.

The crossing was in sight of the Bertrand home. The deceased at the time of the accident was employed by the Ferry Bomber Command as a flight engineer. He would return periodically to his home in Rouses Point. The record does not show what the three young men had been doing during the evening before the accident.

The only eyewitness to the accident was a young man, Raymond S. Gagnon, who was employed by the defendant as a yard clerk. He was standing in the vicinity of the northeast corner of the crossing checking car numbers. The train was moving at a speed of five or six miles per hour. As the train passed over the crossing the illumination was sufficient for this witness to read the car numbers and make an entry thereof in a memorandum book. The illumination was from the street light and the clearness of the night. He testified to seeing the man with the lighted lantern on the first car and the second man on top of a car with a lighted lantern some eight cars behind the lead car who was waving a lantern in a circular motion. He testified that the car on which the second man was riding was only one or two cars from the one with which the automobile collided and which had just passed over the crossing in a northerly direction.

The weather was clear and cold and the roadway was covered with hard-packed snow. The automobile crashed into the side of the tenth car as it was passing over the crossing.

The court charged the jury that the failure of the defendant to have the gates in operation at the time of the accident, in view of all the facts and circumstances, cannot be construed as a ground of negligence and that the law does not require that a railroad must maintain gates at crossings nor does the law require a railroad to install blinkers or a watchman. The court charged that the purpose of giving warning signals of the approach of a train, either by whistle, bell or otherwise, was to warn travelers upon the highway of the approach of a train and that the proof was it was doing so at the time this train approached and that the matter of warning signals is remote and that the defendant cannot be held responsible for any alleged failure of such signals.

The rule, known as 102-A, was admitted in evidence over the defendant's objection. It provided as follows: " When a train is shifting over a crossing where there is no watchman, a trainman must be stationed sufficiently near the crossing to give warning to persons using the same."

The court, charging the jury, said: " A rule of the railroad regarding the presence of a man at the crossing when cars were being shifted was received in evidence. You heard it read. You heard what was being done with these cars. Were they being switched or shifted? The yardmaster says they were being delivered to another road and were not being shifted in railroad parlance. The crossing here was within the yards of the railroad. I leave it to you to determine whether the rule applies here under the circumstances and whether a watchman should have been at the crossing in the exercise of reasonable prudence and care. Unless this was a shifting operation at the time the rule has no application and you must disregard it."

A foundation necessarily had to be laid by proof that the defendant was engaged in a shifting operation before this rule could have any application to the facts in this case.

The assistant yardmaster of the defendant at Rouses Point was called by the plaintiff. He testified that the train involved had been made up as a unit in the south yard, which was at least a quarter of a mile south of the crossing, that the defendant was engaged in moving this train from the south yard to a point some distance north of the crossing where it was to be delivered as a unit to the Canadian National Railway. He testified positively that the train was not being shifted. No cars were being cut out or added to it. The train had been made up in the south yard as a unit and was being transferred across the crossing as a solid train for delivery to another railroad. Therefore, under the evidence in the case, the rule had no application and it was error to submit to the jury the question of the defendant's violation of the rule because there was no proof in the record that the rule applied.

In order to maintain an action for negligence producing injury to a person or property there must be some obligation or duty to the plaintiff which the defendant has left undischarged or unfulfilled.

Common experience suggests that a large box car crossing a highway, under an electric light burning within a few feet of it, on a clear, cold night, is of itself sufficient notice of its presence and that the highway was obstructed.

There is no proof in this case of a violation of any duty or obligation which the defendant owed a traveler under the circumstances or what measures it should have taken to prevent this unusual occurrence. The record failed to show any actionable negligence on the part of this defendant. (*Scott* v. *Delaware, L. & W. R. R. Co.,* 222 App. Div. 409, 226 N. Y. S. 287.) The judgment and orders should be reversed, without costs and the complaint dismissed, without costs. (*Pascal* v. *Pascal,* 254 App. Div. 807; *Red Star Express Lines of Auburn, Inc.,* v. *Lehigh Valley R. R. Co.,* 257 App. Div. 923.)

The judgment and order reversed on the law, without costs, and the complaint dismissed, without costs.

All concur.

Judgment and order reversed on the law, without costs, and the complaint dismissed, without costs.