Van Voobhis, J.
 

 This grade crossing accident occurred on Route 3A at what is known as Herrings Crossing, a short distance east of Deferiet and about six miles west of Natural Bridge.
 
 *236
 
 The single railroad track runs north and south. Plaintiff proceeded west on the two-strip concrete highway. To the north of the crossing is a siding which serves a lumber yard of the St. Regis Paper Company. Twenty-nine freight cars had been left on this siding to be picked up by defendant’s freight train of 30 cars which had left Ogdensburg at two o ’clock in the afternoon of November 8,1957, and stopped at Herrings Crossing at
 
 5:00
 
 p.m. The 30 cars on the train were cut off and shunted north of the crossing where they or some of them were, left standing while the locomotives picked up the cars of the St. Regis Paper Company. The point of switch over from the paper company’s siding is 39 feet north of the highway crossing of Route 3A where the accident occurred. The switching or “ shifting ” operation occupied from 30 to
 
 45
 
 minutes before the accident. It required crossing the highway repeatedly by the two diesel engines and freight ears. At about 5:30 p.m. in the darkness plaintiff ran into the sixth or seventh car of the train behind the locomotives. The engineer testified that “ It was a windy night * * * Terrible — raining — wind blowing — * * * about as bad a night as I have ever seen
 
 * * *
 
 real dark ”. The conductor testified that ‘
 
 ‘
 
 It was storming, raining terrible, like in sheets ’ ’.
 

 At the time of the accident the switching or shifting operation, as the jury could find, had been almost completed. The freight train had been re-formed, after picking up the St. Regis Paper-Company’s cars, and had started on its way southward. The conductor was still on the ground with a flashlight at some distance north of the crossing checking the brakes of the freight ears as they slowly passed him, to make sure that they were released before he was to go aboard the caboose. This was the standard practice in that kind of an operation. From these facts the jury could find that the switching or shifting operation had not been completed when the accident occurred.
 

 The importance of this point derives from operating rule 103 of the railroad which is the main bone of contention. The pertinent portion of it reads as follows: 1 ‘ when shifting over public crossings at grade not protected by a watchman, or by manually operated gates, or manually operated flashing light signals, a member of the crew must protect the crossing.”
 

 The admission of this rule was objected to as incompetent and immaterial and without foundation, and the defendant excepted to all references to it made in the charge.
 

 
 *237
 
 No member of the crew protected this crossing. There was no watchman and no manual or automatic signals. The Trial Justice instructed the jury that the railroad was to be judged by the standard of reasonable care, in conjunction with which they might consider rule 103 as 1£ a standard that the railroad sets itself for its employees,” but that violation of the rule, if it was violated, £ £ is not in and of itself negligence ’ ’ and that whether or not a violation would be negligence depended upon whether they found that it set a standard which reasonable prudence required. If the rule set a higher standard than that, the jury were told that the rule would not avail the plaintiff.
 

 In saying that these instructions were proper and that rule 103 was correctly admitted into evidence, we shall review briefly the law on this subject as it has been decided in this and other jurisdictions.
 

 In New York State operating rules were held to be admissible by the Second Department in
 
 Sullivan
 
 v.
 
 Richmond Light & R. R. Co.
 
 (128 App. Div. 175). More recently they were denied admission in the Fourth Department in
 
 Taddeo
 
 v.
 
 Tilton
 
 (248 App. Div. 290) in an opinion by Justice Edgcomb, which cited all the applicable New York State law until that date. Still more recently, the Second Department came to the same conclusion in
 
 Rizzo
 
 v.
 
 Long Is. R. R. Co.
 
 (14 A D 2d 927), in denying a motion to compel the production before trial of operating rules and regulations for inspection on the ground that they are not evidence. The First Department compelled their production in
 
 Newman
 
 v.
 
 New York City Tr. Auth.
 
 (7 A D 2d 628). The Third Department has held such rules to be competent evidence in
 
 Wilson
 
 v.
 
 State of New York
 
 (14 A D 2d 976, motion for leave to appeal den. 11 N Y 2d 643) as well as in
 
 Bertrand
 
 v.
 
 Delaware & Hudson R. R. Co.
 
 (267 App. Div. 228). The opinion in the latter case by Justice Crapser discusses the operating rule with which we are presently concerned, calling for protection of highway crossings where there is no watchman when a train is ££ shifting ’ ’. Although that case held that the train involved in it was not being ££ shifted ”, and that consequently the rule would not apply, it is plain from the opinion that the rule would have been regarded as relevant and competent if it had been violated.
 

 The New York cases excluding operating rules stem from
 
 McGrath
 
 v.
 
 New York Cent. & H. R. R. R. Co.
 
 (59 N. Y. 468)
 
 *238
 
 and a statement in an opinion by Chief Judge Hiscook in
 
 Long-acre
 
 v.
 
 Yonkers R. R. Co.
 
 (236 N. Y. 119). That case involved injury to a youngster who went upon the front platform of a streetcar and jumped off from the platform while the streetcar was in motion. The court held that a rule that the doors opening on the platform should be closed to keep passengers from riding on the platform was not designed to prevent accidents like that, but was to avoid interference with the motorman by passengers lest they divert his attention from operating the streetcar. The opinion does contain this comment (p. 125), which was not necessary to the decision: “ As is well argued by respondent’s counsel the more cautious an employer is and the more carefully he regulates the conduct of his employees, even though far beyond what the law requires, the more subject he will be to liability because some employee fails to obey the rule.” We are not dealing, be it noted, with the limited situation where knowledge of an operating rule by an injured member of the public, and reliance upon its being observed, affect a question of his contributory negligence. We are concerned with the broader question whether such a rule may constitute an index of the care which is to be required under the circumstances, and whether it may properly be considered by the triers of the fact in determining the general issue of whether reasonable care has been taken. It may well be that such a rule should be excluded if, as matter of law, it transcends the area of reasonable care. It seems unrealistic, however, to treat such rules as this as applying only to the crews of trains without bearing upon the relationship of the railroad to the general public. For one thing, such rules may be said to be part of the
 
 res gestae
 
 as being an integral part of the operation of trains. There are many railroad cases where absence of rules has been held to be evidence of negligence in instances where reasonable care would have called for the adoption of suitable rules, e.g.,
 
 Devoe
 
 v.
 
 New York Cent, & H. R. R. R. Co.
 
 (174 N. Y. 1). The case last cited also holds that it is competent in establishing standards of care to show what rules have been adopted by other railroads, at least in a case involving injury to a railroad employee. To similar effect are
 
 Reed
 
 v.
 
 Davis
 
 (249 N. Y. 35) where the plaintiff was a telegraph linesman, and
 
 Egelston v. New York, Chicago & St. Louis R. R. Co.
 
 (205 N. Y. 579-580) holding in case of an
 
 *239
 
 employee that ‘ ‘ while the custom of other companies was not controlling it was competent evidence to be considered by the jury in determining as to the necessity or propriety of a rule regulating the number of cars, and that the exclusion of proof of the custom was too serious an error to be disregarded.”
 

 Although the point was not raised in
 
 Wolf
 
 v.
 
 Baltimore & Ohio R. R. Co.
 
 (264 N. Y. 57), it may be noted that, in determining the existence of factual issues regarding negligence and contributory negligence, the opinion by Judge Johit F. O ’Beielibases the existence of such issues almost entirely on violations of railroad operating rules. To be sure, that was an action by the estate of a deceased engineer, from which the argument might be made that the rules were there applied to an employee of the railroad rather than to the general public; nevertheless, it involved a collision between two trains, and it is unlikely that different standards of care could be applied in order to evaluate the conduct of the railroad in managing the other train depending upon whether death resulted to a passenger or to the engineer.
 

 At 50 A. L. R. 2d 16 is an extensive annotation to the case of
 
 Bryan
 
 v.
 
 Southern Pacific Co.
 
 (79 Ariz. 253), decided by the Arizona Supreme Court in 1955, entitled “ Admissibility in evidence of rules of defendant in action for negligence.” The footnotes comprise cases from 24 other States as well as from the Federal courts and the cases cited indicate that, in approximately three fourths of the jurisdictions in which the question has been considered and determined, rules such as this are admitted in evidence in actions involving the public subject to instructions of the kind that were given here.
 

 In case of a complexly integrated organization like a railroad, affected with a public interest, which, like other large industry, adopts company rules which closely touch the lives of employees as between themselves and in their relations to the public, these should be treated as having some of the characteristics of municipal ordinances or other public regulations. Violation of them, in the conventional phrase, is not negligence in itself but under certain circumstances may be regarded by the trier of the fact as some evidence of negligence. When a private organization undertakes functions that are affected with a public interest, the United States Supreme Court has held in the
 
 *240
 
 well-known company town case that the private organization is subject to some governmental responsibilities
 
 (Marsh
 
 v.
 
 Alabama,
 
 326 U. S. 501; see other decisions and discussion in Judge Ftjld’s dissenting opinion in
 
 Dorsey
 
 v.
 
 Stuyvesant Town Corp.,
 
 299 N. Y. 512, bottom p. 539 through p. 544).
 

 It was within the province of the jury to find that observance of rule 103 fell within the orbit of what is required by reasonable care under the common law. If a train obstructs a public highway crossing while it is in motion in making its ordinary run (long freight trains do this for considerable periods of time even at high speeds), no negligence can be ascribed to the railroad for not stopping to drop oft trainmen to warn motorists, nor would the railroad company ordinarily be liable in case of an automobile striking the side of a train under such circumstances unless the Public Service Commission requires the maintenance of a watchman or automatic or manually operated signals which were not required here. By the same token, if a train stops briefly on a crossing due to some emergency, the railroad could hardly be held liable for not protecting the crossing by a trainman with signals unless it had stood there long enough so that in the exercise of reasonable care trainmen would have had opportunity to station themselves on the highway beside the tracks, or if it would reasonably be anticipated that the train would soon resume its course. - Upon the other hand, if, due to switching or shifting operations or to some other cause it would normally be anticipated that the train would occupy the crossing continuously or at frequent intervals for an extended period of time, the exercise of reasonable care might well demand protection to vehicular traffic.
 

 Upon the question of contributory negligence, it may well be that the length of the interval of time during which a train has occupied a crossing is not of importance. If a motorist runs into the side of a train, it has little bearing on the degree of care which he has exercised to know how long the train has blocked the crossing. In any instance, even where a train has not reached the crossing, the operator of a motor vehicle is called upon to exercise the care required by section 53-a of the Railroad Law, which provides in case of a marked crossing that: “ It shall be the duty of the driver of any vehicle using such street or highway and crossing to reduce speed to a safe limit upon passing
 
 *241
 
 such sign and to proceed cautiously and carefully with the vehicle under complete control.” Under conditions of good visibility
 
 (Bertrand
 
 v.
 
 Delaware & Hudson R. R. Co., supra)
 
 or even of poor visibility due to prevailing weather conditions
 
 (Falin
 
 v.
 
 Lyford,
 
 267 App. Div. 931), it may be contributory negligence as matter of law for a motorist to run into the side of a train (99 A. L. R. 1454, 1460, 1462; 161 A. L. R. 111, 135, 148). Here, however, the application of the contributory negligence rule is complicated by an unusual circumstance. Approximately a quarter of a mile before the scene of the accident plaintiff was overtaken and passed by a station wagon. When it was approximately 150 feet ahead of him he suddenly saw its brake lights go on, took his own foot from the accelerator placing it on his brake pedal, and, while he was coasting along in this fashion, the station wagon without previous warning skidded completely around and faced backward toward him in an easterly direction with its headlights in his eyes. By this time he testified that he was 25 to 30 feet from the station wagon when he jammed oh his brakes and skidded on the wet highway into the train .which, after passing the lights of the station wagon, he testified that he first saw in front of him approximately 25 feet away. Plaintiff testified that his automobile had been going at about 45 miles per hour and that he was going at about 25 miles to 30 miles per hour when he was opposite the station wagon just before striking the train.
 

 Under these circumstances the question of plaintiff’s freedom from contributory negligence was properly submitted to the jury on account of the difficulty of seeing the train, due to an emergency not of his own creation, on account of the blinding headlights of the station wagon under the conditions described when he was slightly more than 175 feet from the railroad tracks. Otherwise he might have seen the train in time to have averted a collision, as the driver of the station wagon did notwithstanding that he was going faster than plaintiff (see annotation at 161 A. L. R. 125
 
 et seq.). “
 
 Neither does the failure of the claimant to stop his car when approached by an automobile having glaring headlights constitute contributory negligence
 
 (Shaffer
 
 v.
 
 State of New York,
 
 256 App. Div. 1053) ” as matter of law. (Dye, J., Court of Claims, in
 
 Wagner
 
 v.
 
 State of New York,
 
 177 Misc. 1078, 1079;
 
 Bourne
 
 v.
 
 Gristede Bros.,
 
 246 App. Div. 822.)
 

 
 *242
 
 The
 
 judgment
 
 appealed from should be affirmed, with costs.
 

 Chief Judge Desmond and Judges Dye, Fund, Burke, Foster and Scileppi concur.
 

 Judgment affirmed.