OPINION OF THE COURT
Donald N. Silverman, J.
Defendants Consolidated Rail Corporation (Conrail) and John Moore move to reargue this court’s decision/order of April 15, 1993. That order denied a motion for summary judgment seeking to dismiss the complaint. In denying the motion this court considered allegations, as stated at defendants’ depositions, that the crew of defendant’s train engine engaged in certain safety practices in their approach to, and crossing of, the roadway where the accident occurred. Plaintiffs, with the added support of a nonparty witness, contested these allegations.
This court found that a question of fact existed (see, Bastek v Lehigh & New England R. R. Co., 9 AD2d 692, 693 [2d Dept 1959] ["Negligence * * * must be found, if at all, in the manner in which the train was moved in all the circumstances then and there obtaining (citations omitted)”]).
Defendants, on reargument, contend that the prior decision *865 misapplied the law. They allege that at the time of the accident the train spanned the crossing, and the front of the engine was past the far side of the crossing when impact occurred. This is not controverted by plaintiffs.
Defendants raise three points of law which they argue were misapplied and should be considered on reargument. First, the crossing was properly signed as required by statute (see, Railroad Law §§ 53, 53-a). Second, whatever safety practices the crew engaged in were not required by statute, and to the extent such practices reflect internal regulations imposing a standard higher than that set by law, they are not admissible (see, Clarke v New York City Tr. Auth., 174 AD2d 268, 275 [1st Dept 1992]). Third, since the train was across the roadway at the time of impact, a standing car rule applies, which would require as a matter of law that the complaint be dismissed (see, Scott v Delaware, Lackawanna & W. R. R. Co., 222 App Div 409, 411 [3d Dept 1928]; Pascal v Pascal, 254 App Div 807 [4th Dept 1938]; Hurst v Union Pac. R. R. Co., 958 F2d 1002 [10th Cir 1992]).
The motion for reargument is granted. In considering its prior decision/order in light of the present motion, this court finds that the standing car rule and the issue of detrimental reliance raised by defendants were not adequately addressed. In granting reargument, this court will consider the motion in its entirety.
With respect to the first point, it is not controverted that the crossing had the requisite signage. However, this does not render defendants immune from liability. Besides a statutory duty under the Railroad Law, defendants Conrail and Moore are subject to a common-law duty as well. This is addressed below.
With respect to the argument of internal regulations, the record indicates that in performing the safety practices alleged, the crew appears to have been acting on their own initiative as such conduct was not specifically required for this crossing by Conrail. Hence, this matter is factually distinct from Clarke (supra). Furthermore, it must be borne in mind that even if the crew had been following internal regulations, their actions in approaching the crossing, as opposed to the act of crossing itself, are distinct. An approaching train is under a duty to warn of its approach regardless of internal regulations. Plaintiffs argue that there was a failure to give such warning and that this led to the accident. These are *866 questions of fact, and all the facts must be considered (Bastek v Lehigh & New England R. R. Co., supra; see also, 6A Warren’s, New York Negligence, Collisions of Trains, §§ 5.03, 5.04 [3d ed 1972]).
Defendants argue lack of reliance by plaintiffs on the conduct of the crew (see, Nallan v Helmsley-Spear, Inc., 50 NY2d 507 [1980]; see also, Gordon v Muchnick, 180 AD2d 715 [2d Dept 1992]). Defendants point to the many cases holding that a railway is not obliged under Railroad Law §§ 53 and 53-a to provide a flagman or warning lights. They argue that the alleged conduct of the crew is not admissible without proof of reliance.
This argument remains tied to the conduct of the crew as the train was in the act of crossing. The conduct of the crew in approaching the crossing remains open to question. Firstly, plaintiff certainly had a right to rely on defendants to give warning of the approaching train. Whether the train provided such warning at all is a disputed question requiring a trial. Secondly, the train approached, stopped just short of the crossing, and then commenced to slowly advance after one of the crew allegedly placed lighted flares on the roadway. This creates another question of fact, to wit: at which point did the train’s approach end, and with it the duty to give warning. Both these questions preclude a grant of summary judgment.
The occupied crossing, or standing car rule, referred to by plaintiff is set out in Hurst (supra). This case relied on decisional law from Oklahoma. It involved an automobile traveling at night in heavy fog which struck the 47th car of a moving train. Despite the critical view of the court therein, which referred to the standard as a legal dinosaur trampling twentieth century negligence law, the summary judgment in favor of the defendant railroad was upheld.
At issue here is whether as a matter of law New York State has a similar occupied crossing rule, and whether this would require dismissal of the complaint.
Apart from Scott and Pascal (supra) there are a handful of other New York cases involving accidents between an automobile and a train occupying a crossing (see, Killen v New York Cent. R. R. Co., 225 App Div 8 [4th Dept 1928]; Muldoon v Lehigh Val. R. R. Co., 279 App Div 848 [4th Dept 1952]; Gordon v New York Cent. R. R. Co., 286 App Div 933 [3d Dept 1955]; see also, Danbois v New York Cent. R. R. Co., 12 NY2d 234 [1963]). The Court in Danbois was dealing with the *867 significance of an operating rule of the defendant railroad company in the context of the then existent contributory negligence standard in New York. In discussing the province of the jury to determine what constituted reasonable care, the Court set forth different factual/legal scenarios under the common law that a jury might consider. The first of these seems to state the then accepted New York crossing standard: "If a train obstructs a public highway crossing while it is in motion in making its ordinary run * * * no negligence can be ascribed to the railroad for not stopping to drop off trainmen to warn motorists, nor would the railroad company ordinarily be liable in case of an automobile striking the side of a train under such circumstances” (supra, at 240).
By comparison, the Oklahoma standard is as follows: "Ordinarily, the presence of a train or railway cars on a crossing, whether moving or stationary, is sufficient notice to a driver of a vehicle, on the highway of such obstruction and, in the absence of unusual circumstances, the operating railway company is not under any duty to provide any other notice or warning.” (Hurst v Union Pac. R. R. Co., supra, at 1004.)
As is apparent, these standards are relatively similar. While there is no reference in New York law to a standing car or occupied crossing rule, per se, it is clear that the law has been applied in the past as though such a rule did exist.
However, as applied in New York under the present comparative negligence standard, this rule should no longer exist. The case of Falin v Lyford, 267 App Div 931 (3d Dept 1944) cited by Gordon (supra) is a particularly apt illustration of the prior negligence standard, which was replaced by CPLR article 14-A (L 1975, ch 69). The facts appear almost on point to the case at bar, and have a strong similarity to the Hurst case (supra) as well, to the point that in Falin the decedent also struck the 47th car of a moving freight train. In Falin, the Third Department nonsuited the plaintiff on the basis of contributory negligence as a matter of law and cited several cases including Pascal (supra) as supporting this. This is no longer the law in New York. Defendants would have this court ignore a supervening legislative act, and blindly apply precedent predating the statute.
A railroad has a common-law duty to exercise reasonable care, as well as those duties established by statute. The fact that the train was struck while engaged in crossing a highway does not in and of itself resolve the issue of the existence of a duty of reasonable care. Rather than focusing on the precise *868 moment of impact to the exclusion of all else, it is necessary to look at those facts and circumstances leading up to the point of collision (see, Bailey v Baltimore & Ohio R. R. Co., 227 F2d 344, 346; see too, Bastek v Lehigh & New England R. R. Co., supra; Danbois v New York Cent. R. R. Co., supra).
New York requires the operator of an automobile to observe roadway conditions and to see what there is to see (see, Warren’s, op. cit.). While it can be reasonably argued that hitting a train already in a crossing establishes some degree of negligence on the part of the car operator as a matter of law, since New York no longer follows a contributory negligence standard, any degree of negligence on the part of the train company would allow the case to survive. It should be stated then that a standing car or occupied crossing rule can no longer be found to exist in New York.
It is the finding of this court that questions of fact exist with respect to the manner of the train’s approach and passage of this crossing. The motion for summary judgment is denied.