15-1786
McGowan v. United States

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2015

(Argued: March 2, 2016          Decided: June 7, 2016)

Docket No. 15-1786

_____

DANIEL MCGOWAN,

*Plaintiff-Appellant,*

—v.—

UNITED STATES OF AMERICA, TRACY RIVERS, Residential Reentry Manager,

*Defendants-Appellees,*

CORE SERVICE GROUP, INC., COMMUNITY FIRST SERVICES, INC., GRACE TERRY, Facility Director, MASSIEL SURIEL, Case Manager, UNKNOWN UNITED STATES MARSHALS,

*Defendants.*[1]

_____

[1] The Clerk of the Court is directed to amend the caption to conform to the above.

1

_____

B e f o r e:

KATZMANN, *Chief Judge*, SACK and LOHIER, *Circuit Judges*.

_____

Appeal from a final judgment, entered on April 7, 2015, in the United States District Court for the Eastern District of New York (Cogan, *J.*), dismissing plaintiff Daniel McGowan's complaint. McGowan alleged that, while serving a federal sentence of incarceration, he was placed in solitary confinement for approximately twenty-two hours in retaliation for publishing an article online. As relevant here, he asserted claims for violation of his First Amendment rights against Tracy Rivers, a Bureau of Prisons employee, under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and for false imprisonment and negligence against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680.

We hold that: (1) Rivers is entitled to qualified immunity from McGowan's *Bivens* claim because the asserted First Amendment right was not clearly established at the time of the challenged conduct; and (2) the district court lacked subject-matter jurisdiction of McGowan's FTCA claims because they have no private analogue. Accordingly, we **AFFIRM** the judgment of the district court.

_____

ALEXANDER A. REINERT, New York, NY (David B. Rankin, Rankin & Taylor PLLC, New York, NY, *on the brief*), for Plaintiff-Appellant.

ELLIOT M. SCHACHNER, Assistant United States Attorney (Varuni Nelson, Assistant United States Attorney, *on the brief*), *for* Robert L. Capers, United States Attorney for the Eastern District of New York, Brooklyn, NY, for Defendants-Appellees.

_____

2

PER CURIAM:

Plaintiff Daniel McGowan appeals from a judgment of the United States

District Court for the Eastern District of New York (Cogan, *J.*), entered on April

7, 2015, dismissing his complaint. As relevant here, McGowan asserted claims for

violation of his First Amendment rights under *Bivens v. Six Unknown Named*

*Agents*, 403 U.S. 388 (1971), and for false imprisonment and negligence under the

Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680. The district

court dismissed McGowan's *Bivens* claim on the ground that there is no private

right of action for violation of a federal prisoner's First Amendment rights. It

dismissed McGowan's false imprisonment claim for failure to state a claim upon

which relief may be granted and dismissed his negligence claim for lack of

subject-matter jurisdiction. We affirm the dismissal of McGowan's negligence

claim for lack of subject-matter jurisdiction, and we affirm the dismissal of his

remaining claims on alternative grounds.

## BACKGROUND

On June 4, 2007, following his conviction in the United States District

Court for the District of Oregon on multiple counts of arson, attempted arson,

and conspiracy to commit arson, McGowan was sentenced principally to eighty-

four months' incarceration. On December 11, 2012, he was transferred to Brooklyn House Residential Reentry Center ("RRC") to serve the remainder of his sentence. McGowan alleges that, at Brooklyn House RRC, he received daily work passes, which allowed him to maintain full-time employment as a receptionist, and enjoyed privileges such as weekend home visits, unrestricted use of the internet, a shopping pass, and the opportunity to apply to attend social events.

On April 1, 2013, McGowan published an article on the Huffington Post website under his own byline. *See* Daniel McGowan, *Court Documents Prove I was Sent to a Communications Management Unit (CMU) for my Political Speech*, Huffington Post (Apr. 1, 2013, 8:36 AM), http://www.huffingtonpost.com/daniel-mcgowan/communication-management-units_b_2944580.html. In the article, McGowan asserted that, while serving his federal sentence, he had been placed in a highly restrictive Communication Management Unit in retaliation for publishing political opinion pieces. *Id.*

McGowan alleges that, shortly after his article appeared online, defendant Tracy Rivers, the Residential Reentry Manager at the New York Residential Reentry Management Office of the Bureau of Prisons ("BOP"), determined that

4

he should be issued an incident report and remanded to a federal detention center. The incident report stated that McGowan had violated "BOP Program Statement no. 1480.05 dated September 21, 2000; 540.62 page 5, section (d)," which provided that "an inmate currently confined in an institution may not be employed or act as a reporter or publish under a byline" (the "Byline Regulation").

However, unbeknownst to Rivers, by the time these events occurred, the Byline Regulation had been rescinded. Specifically, in August 2007, a district court in Colorado held that the Byline Regulation was unconstitutional under the First Amendment. *See Jordan v. Pugh*, 504 F. Supp. 2d 1109, 1124 (D. Colo. 2007). On November 27, 2007, the BOP issued mandatory guidance to its staff instructing them not to enforce it. On April 23, 2010, the BOP published an interim rule rescinding the Byline Regulation, and finalized that rule on May 3, 2012.

McGowan alleges that on April 4, 2013, he was taken from Brooklyn House RRC to the Metropolitan Detention Center and placed in the Special Housing Unit ("SHU"). After McGowan's lawyers contacted the BOP, Kerry P. Kemble, Assistant Administrator of the Residential Reentry Management Branch

5

of the BOP, informed Rivers that the Byline Regulation had been rescinded. Kemble and Rivers agreed to expunge the incident report and return McGowan to Brooklyn House RRC. McGowan returned to Brooklyn House RRC on April 5, 2013, having spent approximately twenty-two hours in the SHU.

McGowan commenced this action on August 20, 2014, and filed his Amended Complaint on November 12, 2014. As relevant here, he asserted claims for: (1) violation of his First Amendment rights against Tracy Rivers under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971); (2) false imprisonment against the United States under the FTCA; and (3) negligence against the United States under the FTCA. McGowan also brought state law claims against Core Services Group, Inc. d/b/a Community First Services, Inc., the private operator of Brooklyn House RRC; those claims are not at issue in this appeal.[2]

On March 23, 2015, the district court granted the defendants' motion to dismiss McGowan's Amended Complaint. First, it declined to recognize a *Bivens* remedy for violations of federal prisoners' First Amendment rights. *McGowan v. United States*, 94 F. Supp. 3d 382, 387–90 (E.D.N.Y. 2015). Second, it held that

---

[2] Defendants Grace Terry, Massiel Suriel, and Unknown United States Marshals were not named in the Amended Complaint and also are not parties to this appeal.

McGowan failed to state a claim for false imprisonment because, as an inmate serving a lawful sentence, his confinement was "uncategorically privileged." *Id.* at 390. Third, it held that it lacked subject-matter jurisdiction to hear McGowan's FTCA negligence claim because there was no "private analogue" to the BOP's allegedly negligent failure to follow its own regulation. *Id.* at 392–94. Having dismissed all of McGowan's federal claims, the district court declined to exercise supplemental jurisdiction over his state law claims. *Id.* at 394. This appeal followed.

## DISCUSSION

### I.  *Bivens* **Claim**

In *Bivens*, the Supreme Court recognized "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (citing *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)). We have established a two-step process for determining whether a *Bivens* remedy is available for an alleged constitutional injury. "First, the court must determine whether the underlying claims extend *Bivens* into a 'new context.'" *Turkmen v. Hasty*, 789 F.3d 218, 234 (2d Cir. 2015) (quoting *Arar v. Ashcroft*, 585 F.3d 559, 572 (2d Cir. 2009)). If the

plaintiff's claims arise in a new context, the court then asks "(a) 'whether there is an alternative remedial scheme available to the plaintiff,' and, even if there is not, (b) 'whether special factors counsel hesitation in creating a *Bivens* remedy.'" *Id.* (quoting *Arar*, 585 F.3d at 572).

McGowan argues that his claim does not require us to extend *Bivens* to a new context, and, even if it did, that there is no adequate "alternative remedial scheme" and no "special factor[] counsel[ing] hesitation." *Id.* Accordingly, he argues, the district court erred in refusing to recognize a *Bivens* remedy. We need not decide this difficult issue, however, because we conclude that McGowan's *Bivens* claim fails for the independent reason that defendant Rivers is entitled to qualified immunity.

Although we generally decline to consider arguments that were not passed on by the district court, this principle is prudential, not jurisdictional. *See Fabrikant v. French*, 691 F.3d 193, 212 (2d Cir. 2012). We retain discretion to consider such arguments based on factors such as "the interests of judicial economy" and "whether the unaddressed issues present pure questions of law." *Bacolitsas v. 86th & 3rd Owner, LLC*, 702 F.3d 673, 681 (2d Cir. 2012). Both of these factors are present here. The issue of qualified immunity was presented in the

8

district court, has been fully briefed on appeal, and turns on the purely legal question of whether McGowan alleged a violation of a clearly established right. *See Fabrikant*, 691 F.3d at 212 ("The matter of whether a right was clearly established at the pertinent time is a question of law." (quoting *Dean v. Blumenthal*, 577 F.3d 60, 67 n.6 (2d Cir. 2009)). It is therefore appropriate for us to consider the defense of qualified immunity on appeal.

"The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Wood v. Moss*, 134 S. Ct. 2056, 2066–67 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). For a right to be "clearly established," the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In making this determination, we consider Supreme Court and Second Circuit precedent as it existed at the time of the challenged conduct. *See Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2014). Nonetheless, the "'absence of a decision by this Court or the Supreme Court directly addressing the right at issue will not

9

preclude a finding that the law was clearly established' so long as preexisting law 'clearly foreshadow[s] a particular ruling on the issue.'" *Id.* (quoting *Tellier v. Fields*, 280 F.3d 69, 84 (2d Cir. 2000)). A court may "grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012).

We conclude that, at the time the alleged violation occurred, our case law did not clearly establish that McGowan had a First Amendment right to publish his article. The Supreme Court has held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987)). This test is "particularly deferential to the informed discretion of corrections officials" where "accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff." *Id.* at 90. For example, the Supreme Court has upheld "proscriptions of media interviews with individual inmates, prohibitions on the activities of a prisoners' labor union, and restrictions on inmate-to-inmate written correspondence." *Shaw v. Murphy*, 532 U.S. 223, 229 (2001) (citations omitted).

10

We have not identified any binding authority in existence at the relevant time that either "directly address[ed]" the reasonableness of the challenged conduct or "clearly foreshadow[ed]" a ruling in McGowan's favor, *Garcia*, 779 F.3d at 92, nor has McGowan cited any such case. McGowan relies instead on cases establishing the right of a prisoner to be free from retaliation for filing a lawsuit or grievance. *See Espinal v. Goord*, 558 F.3d 119, 128–29 (2d Cir. 2009); *Davis v. Goord*, 320 F.3d 346, 352–53 (2d Cir. 2003); *Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002).[3] But a prisoner's publishing a bylined article may implicate different penological interests from those implicated by his filing a lawsuit or grievance. For example, in litigating the constitutionality of the Byline Regulation in the District of Colorado, the government took the position that allowing inmates to publish bylined articles could create security problems by permitting such inmates to become "big wheels" in the prison community, or could incite violence, or could intimidate prison staff members. *See Jordan*, 504 F. Supp. 2d at 1120–23. Whether or not we would agree with that analysis is beside the point. We conclude only that, in light of the different interests at stake, our case law

---

[3] McGowan also cites a case relating to a prisoner's free exercise rights. *See Holland v. Goord*, 758 F.3d 215, 225–26 (2d Cir. 2014). That case was decided over a year after the conduct at issue in this case, and therefore is not relevant to the state of clearly established law at that time.

establishing a prisoner's right to file a lawsuit or grievance does not clearly establish a prisoner's right to publish an article under a byline. Indeed, the only authority that McGowan has identified that involved expression similar to that at issue in this case is a district court opinion, which, of course, is not binding. *See Shaheen v. Filion*, No. 9:04-CV-625 (FJS/DRH), 2006 WL 2792739, at *3 (N.D.N.Y. Sept. 17, 2006).

Thus, in light of the absence of authority clearly establishing the claimed right, we are constrained to hold that Rivers is entitled to qualified immunity from McGowan's *Bivens* claim. In so holding, we do not reach the question of whether Rivers violated McGowan's First Amendment rights.

## II.    FTCA Claims

"The United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012) (quoting *United States v. Mitchell*, 445 U.S. 535, 538 (1980)). Subject to certain exceptions, *see* 28 U.S.C. § 2680, the FTCA waives the sovereign immunity of the United States against claims for property damage or personal injury "caused by the negligent or wrongful act or omission of any employee of

the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* § 1346(b)(1); *see also id.* § 2674. Accordingly, "for liability to arise under the FTCA, a plaintiff's cause of action must be 'comparable' to a 'cause of action against a private citizen' recognized in the jurisdiction where the tort occurred." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (quoting *C.P. Chem. v. United States*, 810 F.2d 34, 37 (2d Cir. 1987)). This "private analogue" requirement asks "whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred." *Dorking Genetics v. United States*, 76 F.3d 1261, 1266 (2d Cir. 1996) (quoting *Rayonier Inc. v. United States*, 352 U.S. 315, 319 (1957)).

"When reviewing the dismissal of a complaint for lack of subject matter jurisdiction, we review factual findings for clear error and legal conclusions *de novo*, accepting all material facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Liranzo*, 690 F.3d at 84. "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426

13

F.3d 635, 638 (2d Cir. 2005). The United States' waiver of immunity under the FTCA "is to be strictly construed in favor of the government." *Long Island Radio Co. v. NLRB*, 841 F.2d 474, 477 (2d Cir. 1988).

McGowan asserts claims under the FTCA for false imprisonment and negligence. Under New York law, the elements of the tort of false imprisonment are: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Broughton v. State*, 335 N.E.2d 310, 314 (N.Y. 1975). The district court held that McGowan failed to state a claim for false imprisonment on the ground that the government's confinement of an inmate pursuant to a lawful judgment is "uncategorically privileged." *McGowan v. United States*, 94 F. Supp. 3d 382, 390 (E.D.N.Y. 2015). It also noted that the government argued that McGowan's false imprisonment claim lacked a private analogue, but declined to rely on that ground. *See id.* at 392.

On appeal, McGowan argues that the district court erred in concluding that his confinement was "uncategorically privileged" because New York law recognizes a tort of "wrongful confinement" of an inmate within solitary confinement or keeplock. *See Ramirez v. State*, 655 N.Y.S.2d 791, 794 (N.Y. Ct. Cl.

14

1997). Some New York courts have described the tort of wrongful confinement as a "species of false imprisonment." *Gittens v. State*, 504 N.Y.S.2d 969, 974 (N.Y. Ct. Cl. 1986). To recover for wrongful confinement, a prisoner must demonstrate that "he had been subjected to punitive segregation for no legitimate reason and without the rudimentary protections of due process." *Willey v. Kirkpatrick*, 801 F.3d 51, 71 (2d Cir. 2015) (quoting *Gittens*, 504 N.Y.S.2d at 972). McGowan argues that he adequately stated a claim for wrongful confinement under New York law.[4]

The parties dispute whether McGowan forfeited his wrongful confinement argument by failing to raise it in the district court. Whether or not this argument has been forfeited, however, it fails for the independent reason that the tort of wrongful confinement lacks a private analogue. McGowan asserts, without citation, that the tort of wrongful confinement could run against municipalities and their employees. Even assuming that he is correct, the Supreme Court has made clear that the relevant inquiry is the liability of a "private person" under State law, not that of a "state or municipal entity." *United States v. Olson*, 546 U.S.

---

[4] McGowan does not, on appeal, challenge the district court's conclusion as it applies to ordinary claims of false imprisonment, as distinct from prisoners' claims of wrongful confinement. Accordingly, he has abandoned such challenge.

43, 45–46 (2005). Accordingly, the liability of municipalities or municipal actors performing governmental functions cannot serve as a private analogue.

McGowan further posits that private contractors operating local, state, or federal detention facilities could provide the requisite private analogue. He cites no authority for the proposition that private contractors can be held liable for wrongful confinement under New York law. Even assuming that they can, when private prison contractors perform governmental functions pursuant to contracts with governmental entities, they are not similarly situated to any private actor. The private analogue inquiry asks whether "[p]rivate individuals … may create a relationship with third parties that is similar to the relationship between" a governmental actor and a citizen, not whether a government contractor could create such a relationship. *Olson*, 546 U.S. at 47; *cf. Liranzo*, 690 F.3d at 94–95 (focusing on state-law liability of a person acting "entirely in his or her private capacity"). Private persons cannot establish facilities to detain other persons — only the government can, either on its own or through a governmental contractor. In short, there is no circumstance in state tort law that is analogous to

16

the situation here. Accordingly, there is no private analogue to McGowan's

claim.[5]

McGowan's FTCA negligence claim also fails. McGowan alleges that the

BOP negligently failed to follow its own disciplinary regulations. We addressed a

similar claim in *Chen v. United States*, in which the plaintiff, a federal contractor,

alleged that the General Services Administration negligently misapplied federal

procurement regulations, causing him to lose a lucrative contract. *See* 854 F.2d at

624–25. We held that the plaintiff's claim was not actionable under the FTCA.

First, we held that "violation of the government's duties under federal

procurement regulations 'is action of the type that private persons could not

engage in and hence could not be liable for under local law.'" *Id.* at 626 (quoting

*Jayvee Brand v. United States*, 721 F.2d 385, 390 (D.C. Cir. 1983)). Second, we held

---

[5] The FTCA does not waive sovereign immunity for claims of false imprisonment, excepting those false imprisonment claims arising from the "acts or omissions of investigative or law enforcement officers of the United States Government," which are defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). The government does not challenge Rivers' status as an "investigative or law enforcement officer[]," and we have previously recognized that BOP employees so qualify based on their authority to make arrests under 18 U.S.C. § 3050. *See Hernandez v. Lattimore*, 612 F.2d 61, 64 n.7 (2d Cir. 1979). Nonetheless, the record is silent on this issue, so we assume without deciding that Rivers is an "investigative or law enforcement officer[]" within the meaning of 28 U.S.C. § 2680(h).

that, even if the plaintiff's proposed private analogue — "wrongful sanctions by private associations against individual members" — were analogous to the government's alleged conduct, the plaintiff failed to demonstrate that New York law "recognizes a cause of action *in tort*" for such conduct. *Id.* at 626–27.

McGowan's claim, like Chen's, is grounded solely on the government's failure to follow applicable regulations. *See id*. He contends that the relevant private analogue is a private party's failure to follow its own internal regulations. Even if that situation were analogous to the one presented here, however, McGowan has failed to establish that New York law recognizes a freestanding duty to abide by private regulations. The cases on which he relies establish only that failure to do so constitutes *evidence* of negligence, not negligence in itself. *See Cruz v. Madison Detective Bureau, Inc.*, 137 A.D.2d 86, 91 (1st Dep't 1988) (holding that security company's failure to follow procedures was evidence of negligence); *Haber v. Cross County Hosp.*, 37 N.Y.2d 888, 889 (N.Y. Ct. App. 1975) ("[T]he hospital's failure to abide by its own rule is some evidence of negligence."); *see also Florence v. Goldberg*, 375 N.E.2d 763, 767 (N.Y. 1978) (suggesting that police department's adoption of rules and regulations relating to provision of crossing guards was evidence that it assumed a duty to supervise

18

school crossings); *Danbois v. N.Y. Cent. R. Co.*, 189 N.E.2d 468, 471 (N.Y. 1963) ("Violation of [company rules] . . . is not negligence in itself but under certain circumstances may be regarded by the trier of fact as some evidence of negligence."). Accordingly, McGowan has not "show[n] a violation of a duty for which the applicable state law would provide recovery." *Chen*, 854 F.2d at 627 (quoting *Myers & Myers, Inc. v. U.S.P.S.*, 527 F.2d 1252, 1261 (2d Cir. 1975)).

Finally, to the extent that McGowan asserts a theory of negligence *per se*, it is well established in New York law that "violation of a rule of an administrative agency is merely some evidence of negligence but does not establish negligence as a matter of law because a regulation lacks the force and effect of a statute." *Chen*, 854 F.2d at 627 (alterations and internal quotation marks omitted).

Accordingly, we conclude that the district court correctly dismissed McGowan's negligence claim on the ground that it lacks a private analogue.

## CONCLUSION

For the reasons stated herein, we **AFFIRM** the judgment of the district court.

19