FRANCIS M. REED, as Administrator of the Estate of DAVID M. REED, Deceased, Respondent, v. JAMES C. DAVIS, as Director-General of Railroads, Appellant.

36

(Argued June 7, 1928; decided July 19, 1928.)

*Frank H. Hiscock* for appellant. Defendant was not negligent. (*Edgar* v. *Brooklyn, etc., R. R. Co.*, 146 App. Div. 541; *Tsiampras* v. *Union Pacific R. R. Co.*, 176 N. W. Rep. 366; *Pruitt* v. *Norfolk, etc., Ry. Co.*, 221 S. W. Rep. 552; *Morris* v. *Missouri Pacific R. R. Co.*, 187 N. W. Rep. 130; *So. Pac. R. R. Co.* v. *Stevenson*, 218 S. W. Rep. 151; *Niles* v. *N. Y. C., etc., R. R. Co.*, 14 App. Div. 58.) Plaintiff's intestate assumed the risks of the accident which caused his death. (*C. & O. Railway Co.* v. *Nixon*, 271 U. S. 218; *Connelly* v. *Pa. R. R. Co.*, 228 Fed. Rep. 322; *Dewald* v. *Hines*, 280 Penn. St. 169; *Ingraham* v. *N. Y., etc., R. R. Co.*, 182 App. Div. 112; *Unfried* v. *Baltimore, etc., R. R. Co.*, 34 W. Va. 260; *Sancer* v. *Penn. R. R. Co.*, 205 Penn. St. 609.)

*Paul Shipman Andrews* for respondent. Reed did not assume the risk as a matter of law. (*Dowd* v. *N. Y., O. & W. R. R. Co.*, 170 N. Y. 459; *Fitzwater* v. *Warren*, 206 N. Y. 355; *Felice* v. *N. Y. C. & H. R. R. R. Co.*, 14 App. Div. 345; 211 N. Y. 79; *Gardner* v. *Mich. C. R. Co.*, 150 U. S. 349; *Caronoano* v. *Pomeranz*, 210 N. Y. 188; *Finn* v. *Cassidy*, 165 N. Y. 584; *Eicholz* v. *Niagara Falls H. P. & M. Co.*, 68 App. Div. 441; 174 N. Y.

519; *Lofrano* v. *N. Y. & Mt. Vernon Water Co.*, 55 Hun, 452; 130 N. Y. 658.) The question of the defendant's negligence was properly sent to the jury. (*Conrad* v. *N. Y. C. R. R. Co.*, 137 App. Div. 372; 201 N. Y. 514; *Biondolillo* v. *Erie R. R.*, 215 N. Y. 330; *Froehlich* v. *Interborough R. T. Co.*, 120 App. Div. 474; *DiSario* v. *N. Y., O. & W. Ry. Co.*, 142 App. Div. 159; *Reid* v. *N. Y., N. H. & H. R. Co.*, 17 N. Y. Supp. 801; 63 Hun, 630; 136 N. Y. 638; *Fitzgerald* v. *Erie R. R. Co.*, 158 App. Div. 801; *Lane* v. *N. Y. C. R. R. Co.*, 107 App. Div. 166; *Blanchard* v. *D., L. & W. R. R. Co.*, 211 N. Y. 79; *Felice* v. *N. Y. Central R. R. Co.*, 14 App. Div. 345; *Cincinnati, N. O. & T. P. R. Co.* v. *McGuffey*, 252 Fed. Rep. 25; *Miller* v. *Union Pacific R. R. Co.*, 17 Fed. Rep. 67.)

CRANE, J. David H. Reed in February of 1920 was employed as a telegraph lineman by the defendant, at work installing or repairing telegraph lines along the railroad's right of way about a mile west of the Weedsport station. There was a blizzard blowing at the time and the snow was piled to the height of three or four feet on each side of the tracks. At this point there are four tracks running east and west. At noon the men had returned to a hotel near the station for their lunch. They had made the trip by a motor car which travels on the rails of the track. There was difficulty in getting this motor car through the snow. After lunch the foreman suggested or directed that the men return to work. The motor car, however, was put in a shed near the station as the weather was too severe for its use. To get to the place of work it was necessary for the gang including the deceased to walk along the tracks. The railroad station from which they came was south of the tracks. At that time there was a train standing to the east of the crossing on the third track about ready to start. The whistle had been blown giving the signal for the flagman who had been sent back as a warning, to come aboard

the train. Reed and the other men proceeded to walk to the west on .the northerly tracks; their custom was to walk on the fourth track which would be the one furthest to the north. While they were proceeding they heard the train coming on the third track behind them or else had heard the signals indicating that it was coming, and at the same time saw a train coming on the fourth track from the west. Reed and his associates were then in this situation. They were walking west on the third or fourth tracks. The train was coming behind them on the third track and a train was approaching them on the fourth track. They had to get off both of these tracks or else be injured. Perhaps Reed could have jumped over into the snow to the north of the tracks; I do not know. He went in the other direction. He turned at right angles and went to the south, *i. e.*, to his left, crossed the second track which the company calls No. 1 and was proceeding across the first track or the most southerly track, which the railroad company designates No. 2 when he was struck by an express train coming sixty miles an hour proceeding from west to east.

As stated before, a blizzard was blowing at the time. The snow was so thick that one could not see very far, and the rumbling of the trains made considerable noise.

Reed was killed and his administrator brought this action on the ground that the railroad company or the defendant employer was negligent. The action is under the Federal Employers' Liability Act which removes contributory negligence as a defense and makes the employer liable for the negligence of a superintendent.

The plaintiff recovered a verdict based upon the theory that the boss of this gang of telegraph linemen was negligent in sending them to work in a snow storm under the conditions existing on that day. The trial judge charged that there was no negligence in the operation of the train which struck the deceased. The question left to the jury he phrased as follows: " * * * but

on the question as to whether under the existing conditions these foremen acting in their capacity used and exercised due care and prudence in doing what they did with the men that were with them and under their control that afternoon, having in view all the evidence that has been given to you upon that subject, I have determined to allow that question to go to you, as to whether under all these conditions there was a negligent act on the part of this company through its foremen in allowing or suggesting, or, if you please ordering these men, if they did, to go up that track to perform the work which was necessary to perform."

In this particular the trial judge was in error. There was no such question to be submitted to the jury. The men were accustomed to travel on the tracks in going to and from their work, either walking or going by motor car which ran on the rails. We do not think that it was negligence in the foreman to suggest or direct that the men go back to work in the snow storm and without the use of the motor car. The motor car might have proceeded faster but it would have been on the tracks just the same.

For this reason the judgment must be reversed.

We have, however, considered the situation in which the deceased was placed and consider a new trial necessary for the following reason:

This gang of workmen in proceeding back to work in the blinding storm, obliged to walk upon the railroad tracks with trains coming behind and in front of them, and snow piled up on each side of the tracks, was in a place of obvious danger. While ordinarily the track walker or worker upon the tracks assumes the risk of inherent dangers (*C. & O. Ry. Co.* v. *Nixon*, 271 U. S. 218), this of course is upon the assumption that the master has performed its full duty; has used reasonable care for the safety of its employees. This assumption cannot, of course, avail to relieve the employee where

the risk is plain and obvious so that the failure of duty
by the master cannot be ignored, but it may avail where
the master's fault is unknown to the employee, as, for
example, where rules might have obviated the danger
and the employee does not know whether they have
been adopted or not. Did the railroad in this case have
any rules governing the protection of men who were
obliged to walk upon the tracks under the conditions here
existing? What rules and regulations did railroads have
for protecting men which this company might have
adopted.and used if it had no rules of its own? If there
were no rules which governed such a situation was it
practicable and reasonable to make some rule or regula-
tion which would give warning of the approach of trains
or notify trains that men were on the track doing work
or proceeding to their work, or which would in any other
way guard or protect men from death and injury while
using tracks under necessity of their work? We do not
say or intimate that there are any such rules or that it
would be feasible to adopt any such rules, but we do
think that the plaintiff in this case should have an
opportunity to prove such rules or regulations, if any,
or the practicability of adopting some reasonable rule to
safeguard such a situation.

This court has frequently touched upon this subject
of rules. A case often cited is *Berrigan* v. *New York,
Lake Erie & Western R. R. Co.* (131 N. Y. 582, at page
584), where we said: " There is no proof in the case that
rules for such a case had ever been promulgated by any
other railroad company, or that it was reasonable or
practicable to provide against the occurrence of such
an accident by a rule. The learned trial judge submitted
to the jury the question whether the defendant was at
fault in omitting to make and publish such a rule. This
opened to the jury a wide field for speculation and
conjecture. In the absence of some proof on the part
of the plaintiff that such a rule was in operation by other

roads or of persons possessing peculiar skill and experience in the management and operation of railroads to the effect that such a rule was necessary or practicable under the circumstances, or unless the necessity and propriety of making and promulgating such a rule was so obvious as to make the question one of common experience and knowledge, the court is not warranted in submitting such a question to the jury."

In *Devoe* v. *N. Y. C. & H. R. R. R. Co.* (174 N. Y. 1, page 9) it was stated: " The duty of a master in making rules is measured by the law of ordinary diligence. That law varies with the situation, for what would be ordinary diligence under one set of facts would be negligence in another. If, however, under the circumstances of a particular case, the master has met the obligation of ordinary diligence in making and enforcing a rule he is free from liability, even if some other rule would have been safer and better. The law requires him to make and promulgate reasonably safe and proper rules, and if he does so he is not liable, even if he might have made safer and more effective rules."

For the limitations of this law see *Pearsall* v. *N. Y. C. & H. R. R. R. Co.* (189 N. Y. 474). (See, also, on this point *Freemont* v. *Boston & Maine R. R. Co.*, 111 App. Div. 831; *Doing* v. *N. Y., Ontario & Western R. Co.*, 151 N. Y. 579; *McCoy* v. *N. Y. C. & H. R. R. R. Co.*, 185 N. Y. 276; *Dzkowski* v. *Reynoldsville Carting Co.*, 216 N. Y. 173.) The absence of any rules in the case of obvious and open danger has been held to present a question for the jury. (*Knickerbocker* v. *General Ry. Signal Co.*, 209 N. Y. 404, at p. 406.)

The judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG and O'BRIEN, JJ., concur; ANDREWS, J., not sitting.

Judgments reversed, etc.