■ JOHN PELLEGRINO et al., Plaintiffs, v NEW YORK CITY TRANSIT AUTHORITY, Defendant and Third-Party Plaintiff-Respondent; RAILROAD MAINTENANCE CORPORATION, INC., et al., Third-Party Defendants-Appellants.—In an action to recover damages for personal injuries, etc., the third-party defendants appeal from a judgment of the Supreme Court, Kings County (Lebowitz, J.), entered June 28, 1989, which, following a jury verdict determining that the New York City Transit Authority was 25% at fault in the happening of the accident, Randel Construction Services Corp., Inc. was 25% at fault in the happening of the accident and the plaintiff John Pellegrino was 50% at fault in the happening of the accident, directed the third-party defendant Railroad Maintenance Corporation, Inc., to indemnify the New York City Transit Authority, pursuant to an indemnification agreement contained in the contract between them, for the principal sum of $2,500,000, for which the New York City Transit Authority had settled the plaintiff's claim, according to the terms of a stipulation of settlement agreed to by all parties.

Ordered that the judgment is affirmed, with costs.

On February 2, 1983, the plaintiff John Pellegrino, a crane operator employed by Randel Construction Services Corp., Inc. (hereinafter Randel), a subcontractor of the third-party defendant Railroad Maintenance Corporation, Inc. (hereinafter RMC), was injured on the job site when he was hit by a New York City Transit Authority (hereinafter the TA) train on the elevated subway tracks between the Kings Highway and Avenue M stations on the Brooklyn IND line. On April 16, 1987, the TA settled the plaintiffs' claim against it for $2,500,000.

The TA thereafter demanded indemnification from the contractor RMC, pursuant to a contract which provided that "[t]he Contractor shall be solely responsible for all personal injuries * * * to persons (including, but not limited to, employees of the Contractor and subcontractors and employees of the City or the Authority) * * * occurring on account of or in connection with the performance of the work hereunder or sustained by any employee of the Contractor, subcontractor, City or Authority * * * or other persons while at the site of the work and shall indemnify and save harmless the City, [and] the Authority * * * from loss and liability upon any and all claims on account of such injuries to persons * * * and from all costs and expenses in suits which may be brought against the City [and] the Authority * * * on account of any such injuries to persons * * * irrespective of the actual cause of the accident, but excepting loss and liability resulting from accidents due solely to the negligence of the City [or] the Authority * * * their respective agents, servants or employees" (Contract #PB073355 § 11 [a]). The contract at issue also provided: "If the Contractor shall cause any part of this contract to be performed by a subcontractor, the provisions of this contract shall apply to such subcontractor and his officers, agents and employees in all respects as if he and they were employees of the Contractor; and the Contractor shall not be in any manner thereby discharged from his obligations and liabilities hereunder, but shall be at fault hereunder for all acts and negligence of the subcontractor, his officers, agents and employees as if they were employees of the Contractor" (§ 22 [a]).

At trial, the only issue submitted to the jury was the relative negligence of the TA, Randel, and Pellegrino. The jury determined that there were three concurring causes of the accident: Pellegrino was found to be negligent and 50% at

fault for the happening of the accident, while the TA and Randel were each found to be negligent and 25% at fault.

On appeal, the third-party defendants contend that the attribution of 25% of the fault to Randel is not supported by the evidence, and that for various reasons the indemnification provision in the contract should be held unenforceable. The third-party defendants also complain that the trial court erred in refusing to permit them to amend their answer to include the defenses of "coercion" and "release", and that it further erred in declining to submit to the jury the issue of the validity of the indemnification clause and the TA's settlement with Pellegrino. We find the third-party defendants' arguments to be devoid of merit.

"For a court to conclude as a matter of law that a jury verdict is not supported by sufficient evidence * * * [i]t is necessary to first conclude that there is simply no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial" (Cohen v Hallmark Cards, 45 NY2d 493, 499; O'Boyle v Avis Rent-A-Car Sys., 78 AD2d 431). There was undisputed evidence adduced at the trial that although Randel sent its employees to work on the TA tracks every day, it provided them with no instruction on safety, and it did not require them to wear brightly-colored safety vests. Indeed, although TA employees were not permitted on the tracks without their fluorescent orange vests, Randel employees "never wore them". Pellegrino concedes the accident could have been avoided had he crossed the tracks instead of panicking and attempting to outrun the train. A reasonable interpretation of the evidence is that Pellegrino's poor choice resulted from Randel's failure to provide safety instruction. A rational jury could therefore have concluded that Randel failed in its basic duty to exercise that degree of care "which a reasonab[ly] prudent person would have exercised under the same circumstances", that Randel should have provided safety instruction and should have at least adopted the same rules for its employees' safety that the TA had instituted for its workers (Reed v Davis, 249 NY 35, 39-40), and that its failure to do so constituted a breach of its duty of ordinary care, which was a proximate cause of Pellegrino's accident.

In addition, paragraph 11 (a) of RMC's contract with the TA on its face unambiguously requires RMC to indemnify the TA for job-related damages caused by negligence, unless that negligence was the TA's alone. Here, Pellegrino was found to

have been 50% at fault, while Randel was 25% at fault. Since the verdict against Randel stands, we need not reach the question of whether Pellegrino's comparative negligence is sufficient to trigger the indemnification agreement because Pellegrino's injuries were not due to the "sole" negligence of the TA.

The courts of this and other states have routinely upheld agreements where, as here, two sophisticated parties, represented by experienced counsel, have negotiated at arm's length to enter into a contract containing a clear and unequivocal indemnification clause. This is particularly so where the courts perceive an intention of the parties to allocate between themselves the risk of liability to third parties by requiring one party to procure insurance for their mutual benefit *(see, Hogeland v Sibley, Lindsay & Curr Co.,* 42 NY2d 153, 158-161; *La Vack v National Shoes,* 124 AD2d 352). The provisions of General Obligations Law § 5-322.1 in effect in 1979, when the instant contract was executed, do not require a different result *(see, Quevedo v City of New York,* 56 NY2d 150; *see also, Vey v Port Auth.,* 79 AD2d 920, *mod on other grounds* 54 NY2d 221).

The trial court did not err in refusing to permit the third-party defendants to amend their answer to assert the defenses of "coercion" or "release." While leave to amend a pleading should be freely given (CPLR 3025 [b]), the decision whether to grant such leave is within the court's sound discretion, to be determined on a case-by-case basis *(Mayers v D'Agostino,* 58 NY2d 696). In exercising its discretion, the court will consider whether there has been a gross delay in asserting the amendment. Where the "action has long been certified ready for trial, judicial discretion in allowing such amendments should be * * * ' " 'discrete, circumspect, prudent and cautious' " ' " *(Balport Constr. Co. v New York Tel. Co.,* 134 AD2d 309, 311-312, quoting *Perricone v City of New York,* 96 AD2d 531, 533, *affd* 62 NY2d 661; *Shanahan v Shanahan,* 92 AD2d 566; Siegel, NY Prac § 237). The court will also note how long the amending party was aware of the facts upon which the motion was predicated, and whether it offers a reasonable excuse for its lengthy delay *(Balport Constr. Co. v New York Tel. Co., supra).* Where, as here, the amending party was or should have been aware of the substance of the proposed amendment at the time it served its answer (here, in June of 1985) but waited until the eve of trial (three years later) to plead it—and where no excuse is offered for the delay —amendment is properly denied *(see, Bertan v Richmond Mem. Hosp. & Health Center,* 106 AD2d 362).

Most importantly, the court correctly ascertained from the testimony of Michael Klosk, President of both RMC and Randel, that the TA had not "coerced" RMC into their agreement, but that the corporation had entered into the contract voluntarily, and had profited considerably from it. The defense of "coercion" was therefore palpably without merit.

Moreover, the TA would have been grossly prejudiced had RMC been permitted to raise the previously unpleaded defense of "release" at trial, as the Supreme Court correctly found (see, Fulford v Baker Perkins, 100 AD2d 861). In reliance upon its apparently unassailable indemnification agreement, the TA had entered into a good-faith settlement with Pellegrino in April of 1987, a year and a half before the defense of release was raised on the eve of trial. Had this purported "release" been raised at the time of settlement, the TA would probably have proceeded differently with respect to Pellegrino's claim against it. Significantly, counsel for RMC and Randel was present when the stipulation of settlement was put on the record, but he made no mention of a release—which in any event appears on its face to be addressed to unrelated commercial disputes between the parties (see, Mangini v McClurg, 24 NY2d 556, 562; cf., Cahill v Regan, 5 NY2d 292, 299 [a release may not be read to cover matters which the parties did not desire or intend to dispose of]). RMC's proposed amendment was therefore without merit on its face, and for this reason as well was properly denied (see, Sharapata v Town of Islip, 82 AD2d 350, affd 56 NY2d 332).

The trial court properly withheld from the jury issues relative to the validity of the TA's contract for indemnity with RMC, the economic realities underlying it, the legal meaning of the "sole negligence clause", and the effect of the General Obligations Law on the clause's legitimacy. These were questions of law, properly reserved for the court's determination (see, Kosiorek v Bethlehem Steel Corp., 145 AD2d 935). Nor should the TA's settlement with Pellegrino have been paraded before the jury. Such information could only have suggested to the jury that the TA was the sole culpable party (cf., CPLR 4533-b; see, Abernethy v Azzoni, 78 Misc 2d 832, 833). Furthermore, to the extent that jury speculation would discourage defendants from settling with injured plaintiffs and seeking contribution or indemnification from other defendants thereafter, the disclosure of such matters to the jury would contravene the policy of the State (cf., Dermatossian v New York City Tr. Auth., 67 NY2d 219, 225; Grogan v Dooley, 211 NY 30).

We have examined the third-party defendants' remaining contentions and find them to be without merit. Eiber, J. P., Rosenblatt, Miller and Ritter, JJ., concur.