■ EXCELSIOR INSURANCE COMPANY, Appellant, v ANTRETTER CONTRACTING CORPORATION et al., Respondents. [693 NYS2d 100] —Order, Supreme Court, New York County (Ira Gammerman, J.), entered May 8, 1998, denying plaintiff's motion for summary judgment which sought a declaration that it was not bound to defend or indemnify defendant Antretter Contracting Corporation in the underlying personal injury action; and order, same court and Justice, same date, granting defendant International House's motion for summary judgment declaring that plaintiff is obligated to defend and indemnify Antretter, unanimously reversed, on the law, with costs, defendant's motion denied, and plaintiff's motion granted. The Clerk is directed to enter judgment accordingly.

On July 16, 1992, Willie E. Anderson, a bricklayer, was working for defendant Antretter at a construction site owned by defendant International House, when he fell off a scaffold and was seriously injured. In 1993, he brought an action against International House for an alleged violation of Labor Law § 240 (1) and related claims. His complaint alleged that he was an employee of Antretter at the time of the accident. International House brought a third-party claim against Antretter, asserting that because Anderson was Antretter's employee and International House had no day-to-day control over the worksite, International House was entitled to complete common-law indemnification from Antretter. This third-party action was initiated by International House's primary liability insurance

carrier, Fireman's Fund Insurance, which was defending it against Anderson's claims.

Plaintiff Excelsior Insurance Company was Antretter's own liability insurance carrier. It first learned of Anderson's accident in March 1994 when Anderson's attorney sent a letter to Excelsior claims personnel. After issuing a reservation of rights letter to Antretter, Excelsior investigated the accident and determined that an exclusion in Antretter's policy applied. Specifically, Antretter's policy with Excelsior explicitly excluded coverage for injuries to Antretter's employees, and Excelsior concluded that Anderson was such an employee.

Insurance Law § 3420 (d) provides that in an action involving bodily injury caused by an accident occurring within New York State, an insurer must send notice of its denial of coverage "to the insured and the injured person or any other claimant." Pursuant to this statute, Excelsior sent Antretter a letter denying coverage in April 1994, and also notified Anderson's attorneys.

On May 6, 1994, a claims representative from Fireman's Fund, Joseph Maddiona, contacted Excelsior's claims representative, Jerry Bannister, about International House's third-party action against Antretter. Bannister said that Excelsior had already denied coverage to Antretter due to the employment exclusion. At Maddiona's invitation and to ensure that the denial complied with section 3420 (d), Bannister forwarded a copy of the denial of coverage to Fireman's Fund, and another copy to International House's excess carrier, General Star Insurance Co.

Subsequently, in August 1994, Excelsior commenced the instant declaratory judgment action seeking to establish that its policy provided no coverage in relation to Anderson's accident. Antretter's answer did not deny that Anderson was its employee. Moreover, in its April 6, 1994 third-party complaint in the underlying litigation, International House had argued that Anderson was Antretter's employee. Following an evidentiary hearing, the New York State Workers' Compensation Board issued a decision in December 1995 that Anderson was an employee of Antretter. This prompted Excelsior to move for summary judgment on February 16, 1996. Responding with its own motion for summary judgment, International House reversed position and claimed for the first time that Anderson was *not* an Antretter employee but an independent contractor.

Meanwhile, the pending actions had been temporarily stayed when Antretter filed for bankruptcy. On April 23, 1996, in the bankruptcy proceeding, Antretter consented to judgment

against it by International House in the third-party action. International House's insurers, Fireman's Fund and General Star, then settled the main action with Anderson. Accordingly, what is at stake in the instant case is whether International House's insurers can recoup from Antretter's insurer the money they paid to settle Anderson's claims.

On March 6, 1998, the IAS Court granted Excelsior's summary judgment motion to the extent of declaring the employee exclusion enforceable, but held that issues of fact existed as to whether Anderson was Antretter's employee. A non-jury trial was scheduled to determine this question.

On the eve of trial, on May 6, 1998, International House orally made a second motion for summary judgment and a motion to amend its answer to include the affirmative defense of improper notice of disclaimer under section 3420 (d). International House argued that Excelsior had not fulfilled its obligation to notify all "other claimant[s]" because it had not sent a copy of the notice of disclaimer to International House itself, although it had notified International House's insurers. Notwithstanding the belated and procedurally defective manner in which this defense was raised, the IAS Court erroneously granted International House's motion.

Even apart from their lack of merit, International House's motions should have been denied because the last-minute amendment to the pleadings, four years after its answer was served, was untimely and prejudicial. CPLR 3025 (b) states that leave to amend pleadings shall be given "upon such terms as may be just". One factor to be considered is whether the moving party has unduly delayed asserting the proposed claim or defense. In particular, a court should be hesitant to grant a motion made when the action has long been ready for trial (*Pellegrino v New York City Tr. Auth.*, 177 AD2d 554, 557, *lv denied* 80 NY2d 760). Where the amending party should have been aware of the affirmative defense when it served its answer, but gave no reasonable excuse for waiting until the eve of trial, amendment should be denied (*Pellegrino v New York City Tr. Auth., supra*).

All of the facts upon which this defense was based were known to International House from the outset. International House's belated challenge to the notice of disclaimer seriously prejudiced Excelsior, by depriving Excelsior of the opportunity to conduct discovery on this issue (*James-Smith v Rottenberg*, 32 AD2d 792). For instance, given sufficient notice, Excelsior could have deposed International House and Fireman's Fund representatives to establish that the insurer was the real party

in interest, controlled the litigation, and had actually asked Excelsior to send the disclaimer letter directly to Fireman's Fund.

As for the merits of defendant's Insurance Law § 3420 (d) defense, here again the equities are clearly on plaintiff's side. Indeed, it is hypocritical for International House to raise the defense of Excelsior's technical noncompliance with the notice statute, when International House itself unfairly surprised Excelsior not only with this defense but also with its sudden reversal of position on Anderson's employee status (discussed *infra*).

The real question is whether Excelsior's noncompliance with the literal terms of section 3420 (d) was severe enough that it should be required to pay $1 million on a claim otherwise not covered by the policy—particularly where the real parties in interest who will receive that payment, i.e., International House's insurers, *did* receive a proper notice of disclaimer under section 3420 (d). In *Zappone v Home Ins. Co.* (55 NY2d 131, 137), the Court of Appeals stated that literal interpretation of statutes is inappropriate "when to do so will occasion great inconvenience, or produce inequality, injustice or absurdity". The purpose of section 3420 (d) was to protect the insured, the injured person, and any other interested party who has a real stake in the outcome, from being prejudiced by a belated denial of coverage. It was not intended to be a technical trap that would allow interested parties to obtain more than the coverage contracted for under the policy (*Zappone v Home Ins. Co., supra*; *see also, Utica Fire Ins. Co. v Spagnolo*, 221 AD2d 921; *Central Gen. Hosp. v Chubb Group*, 90 NY2d 195).

Here, International House's insurers were the real parties in interest (*see, New York Bd. of Fire Underwriters v Trans Urban Constr. Co.*, 91 AD2d 115, *affd* 60 NY2d 912). International House itself would suffer no loss regardless of Excelsior's disclaimer, because International House's insurance would pay for whatever settlement it gave Anderson. The insurers, as subrogees, were the ones seeking reimbursement from Antretter's insurer (since Antretter itself was bankrupt).

Moreover, Fireman's Fund, which was conducting International House's defense and litigating the third-party action, directed Excelsior to send the disclaimer letter directly to Fireman's Fund. Service of notice on the claimant's attorney, rather than on the claimant personally, has been deemed sufficient under section 3420 (d) (*New York Mut. Underwriters v O'Connor*, 105 AD2d 994, 995). While defendant is correct that

an insurer is not always equivalent to an attorney as an agent for receipt of notice, because the latter is an agent for all purposes while the former may have conflicts of interest with the insured, this is not such a case. Failure to serve a formal notice on the nominal party in interest does not render ineffective the denial of coverage where, under the circumstances, the party who received the notice was expected to forward it to the nominal party and had undertaken to protect the nominal party's rights (*Losi v Hanover Ins. Co.*, 139 AD2d 702, 703, *appeal dismissed* 72 NY2d 950).

Turning to Excelsior's own summary judgment motion, we find that the IAS Court erred in finding a triable issue as to Anderson's employee status. To begin with, under the doctrine of judicial estoppel, International House may not raise this argument because it obtained a judgment in its favor by taking a contrary position in a prior action (*Environmental Concern v Larchwood Constr. Corp.*, 101 AD2d 591, 593). While the stipulation entered into by Antretter and International House in the United States Bankruptcy Court for the Eastern District of New York does not explicitly say "Anderson was an employee of Antretter," International House proceeded on this theory in order to induce Antretter to stipulate that Antretter had exclusive control over the worksite and to accept liability. International House's pleadings in the third-party action make this quite clear.

There is additionally no issue of fact as to Anderson's employment situation. Both Anderson and Antretter's representative referred to him as an employee in their depositions. Antretter contacted him for this and other construction jobs, told him where to go and what to do, and supplied all tools and materials except for the hand tools that all bricklayers bring to an employer's worksite. Antretter planned to deduct Social Security and unemployment taxes from Anderson's wages, although it never got around to purchasing Workers' Compensation insurance because Antretter had just been formed as a corporation in June 1992. The Workers' Compensation Board fined Antretter for failing to purchase the insurance after it determined that Anderson was a covered employee. The Workers' Compensation Board's determination of Anderson's status removes this factual issue from the instant case. In *Baughman v Merchants Mut. Ins. Co.* (87 NY2d 589), the Court of Appeals held that a Workers' Compensation Board ruling on any employment issue is binding on the employer and its liability insurer. Accordingly, the exclusion in Excelsior's policy applies to deny coverage to Antretter. Although International

House and its insurers did not participate in the Workers' Compensation Board hearing, as judgment creditors trying to enforce the insured's policy, they stand in the shoes of the insured and can obtain no greater coverage from Excelsior than Antretter itself could obtain—namely, none at all (*Matter of Nassau Ins. Co.*, 161 AD2d 146, 147, *affd* 78 NY2d 888). Concur—Rosenberger, J. P., Mazzarelli, Rubin, Andrias and Buckley, JJ.