*751 OPINION OF THE COURT
Michael A. Ciaefa, J.
Plaintiff moves for summary judgment upon its claim for no-fault benefits, and defendant cross-moves for summary judgment dismissing the claim. For the reasons stated below, plaintiffs motion is denied, the cross motion is granted, and the action is dismissed as premature.
The principal issue presented by the motion and cross motion concerns defendant’s failure to give notice to plaintiffs attorneys that it was requesting verification of the claim from the plaintiff medical provider. Defendant’s proof establishes that it mailed timely verification requests directly to plaintiff, but received neither the requested material nor any response. In opposing defendant’s argument that plaintiffs lawsuit should be dismissed as premature, plaintiffs papers contend that defendant’s verification letters should have been sent to plaintiffs attorneys pursuant to the no-fault regulations and that firm’s explicit written request. Although plaintiffs contention has merit, defendant’s failure to send its verification requests to plaintiffs attorneys, by itself, is legally inconsequential. Most importantly, plaintiff does not dispute that it received defendant’s verification letters. In the absence of a prompt objection by plaintiff to the misdirected verification letters, plaintiff is in no position to complain about defendant’s mistake. Its action, therefore, was brought prematurely, and must be dismissed.
The facts relevant to the motion and cross motion are undisputed. By letter dated October 19, 2011, plaintiff submitted a timely claim for no-fault benefits to defendant through a letter from its attorneys, Israel, Israel & Purdy, LLP (IIP). The cover letter from IIP stated, in pertinent part: “in the event you require additional verification of the claim or proof of loss, then your request for the same, including medical records, should be forwarded to us, as Attorneys, and we will in turn arrange for the transmittal to you.”
Plaintiffs claim was received at defendant’s Ballston Spa office no later than October 21, 2011. Following receipt of the claim, defendant timely mailed a verification request to plaintiff on November 3, 2011, seeking submission of a “[l]etter of medical necessity.” For reasons not explained, defendant failed to mail a copy of the letter to IIP Instead, copies were sent only to plaintiffs assignor (Maria Silva) and her attorneys.
When no response was received within the following 30 days, defendant sent a second verification request to plaintiff on *752 December 16, 2011. Again, defendant failed to send a copy of the letter to IIE Again, copies were sent only to plaintiffs assignor and her attorneys.
The court begins its analysis by assuming that no-fault insurers must ordinarily respect a provider’s decision to pursue a claim through communications from and to its lawyers. Once an insurer is advised that it should communicate directly with a provider’s attorneys, any such communications should be directed to those attorneys. Lawyers for parties are ethically bound to observe such a rule. (See Rules of Frofessional Conduct [22 NYCRR 1200.0] rule 4.2 [a] [“a lawyer shall not communicate . . . with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the other lawyer or is authorized to do so by law”].) So, too, a debt collector who knows that a consumer is represented by an attorney is “generally obligated to communicate with the consumer only through the attorney.” (See Rosario v American Collective Counseling Servs., Inc., 2001 WL 1045585, *1, 2001 US Dist LEXIS 13455, *3-4 [MD Fla 2001], citing 15 USC § 1692c [a] [2].) “In such situations, a notice to counsel satisfies the requirement that notice be sent to the consumer.” (Id., 2001 WL 1045585, *1, 2001 US Dist LEXIS 13455, *4.)
Similarly, in matters involving insurance claims, where the insurer has been apprised that a claimant has counsel, appellate court decisions hold that statutory notices to the claimant may properly be sent to “the claimant’s attorney, rather than [to] the claimant personally.” (See Excelsior Ins. Co. v Antretter Contr. Corp., 262 AD2d 124, 127 [1st Dept 1999]; see also St. Vincent’s Hosp. of Richmond v American Tr. Ins. Co., 299 AD2d 338, 339-340 [2d Dept 2002]; New York Hosp. Med. Ctr. of Queens v State Farm Mut. Auto. Ins. Co., 293 AD2d 588, 590-591 [2d Dept 2002]; New York Mut. Underwriters v O’Connor, 105 AD2d 994, 995 [3d Dept 1984].) Indeed, as the court recognized in Lenox Hill Radiology & MIA P.C. v Global Liberty Ins. (20 Misc 3d 434, 438 [Civ Ct, NY County 2008]), “sending [a] verification request to the attorneys [of the medical provider] . . . [is] notice to the principal-provider as a matter of law.”
In view of the foregoing, in cases where a no-fault claimant chooses to have its claim presented thru counsel, and designates counsel as its agent for receipt of requests for verification, a no-fault insurer should scrupulously respect a claimant or provider’s wish that all such communications be sent to its attorneys for their response. Although the processing of a no-fault claim *753 is not supposed to be adversarial (see 11 NYCRR 65-3.2 [b]), practical realities require acknowledgment that attorneys oversee or are involved in each and every step of the process. When such attorneys are designated as a provider’s agent at the claims stage, an insurer ought to honor that designation in the course of processing the provider’s claim for no-fault benefits. Absent circumstances where a statute or regulation requires otherwise, the court sees no reason why an insurer should not communicate directly with counsel for the provider.
Nothing in the no-fault regulations requires a different conclusion. Under the provisions which specifically govern verification requests, an insurer seeking verification must “follow up with the party from whom the verification was requested, either by telephone call, properly documented in the file, or by mail.” (11 NYCRR 65-3.6 [b].) However, the regulation further provides: “[a]t the same time the insurer shall inform the applicant and such person’s attorney of the reason(s) why the claim is delayed by identifying in writing the missing verification and the party from whom it was requested.” (Emphasis added.)
Plaintiffs counsel correctly maintains that her office should be deemed “the applicant’s attorney” for the purpose of receiving notice of any missing verification as required by this regulation. Pursuant to the currently prevailing case law interpretations of section 65-3.6 (b), a provider seeking payment through an assignment is deemed the “applicant.” (See Cambridge Med., P.C. v Progressive Cas. Ins. Co., 29 Misc 3d 186, 188-189 [Civ Ct, Richmond County 2010], discussing East Acupuncture, P.C. v Allstate Ins. Co., 61 AD3d 202 [2d Dept 2009], and Doshi Diagnostic Imaging Servs. v State Farm Ins. Co., 16 Misc 3d 42 [App Term, 2d Dept 2007].) Moreover, defendant cannot dispute that it was aware, from HP’s initial claim letter, that IIP was representing plaintiff in connection with the instant claim. Indeed, IIP clearly placed the insurer on notice that the provider’s law firm was acting as its agent for the receipt of all correspondence concerning the bills at issue. (See Cambridge Med., P.C. v Progressive Cas. Ins. Co., 29 Misc 3d at 189.) Therefore, at a very minimum, defendant should have sent written notice of defendant’s follow-up verification request to both plaintiff and lip in accordance with section 65-3.6 (b).
Instead of doing so, defendant merely sent copies of its letters to plaintiffs assignor and her attorney. Under the circumstances at bar, the insurer’s failure to notify IIP of the request for *754 verification is inexcusable. At least with respect to the follow-up notice, that failure violated the no-fault regulations governing claim verification.
However, it does not necessarily follow that such a mistake requires a decision granting plaintiff’s motion and denying defendant’s cross motion. As a general rule, when notice is given to a person’s designated agent, that notice is typically imputed to the agent’s principal. The premise for the general rule is that the agent owes a duty to his principal to forward the notice. While this no-fault matter presents the opposite situation, where notice was given to the principal not the agent, the same general rules should apply. Just as an agent is duty bound to forward notices to his principal, the principal has an implied duty to forward notices to its agent in cases where the principal intends to have an agent act on its behalf. “Every contract of agency carries with it an implied obligation on the part of the principal to do nothing that would thwart the effectiveness of the agency.” (Sidella Export-Import Corp. v Rosen, 273 App Div 490, 492 [1st Dept 1948].) “A party cannot insist upon a condition precedent . . . when its nonperformance has been caused by himself.” (Id.)
In the instant case, the insurer established that its verification requests were timely mailed to the provider, and the provider does not dispute receiving them. Appellate court decisions make plain that “further communication, not inaction” is necessary to preserve objections to arguably improper insurer verification requests. (Westchester County Med. Ctr. v New York Cent. Mut. Fire Ins. Co., 262 AD2d 553, 555 [2d Dept 1999]; see also St. Vincent’s Hosp. v American Tr. Ins. Co., 299 AD2d at 340; New York Hosp. v State Farm Mut. Auto Ins. Co., 293 AD2d at 590-591; accord Five Boro Psychological & Licensed Master Social Work Servs., PLLC v GEICO Gen. Ins. Co., 38 Misc 3d 354 [Civ Ct, Kings County 2012]; Canarsie Chiropractic, P.C. v State Farm Mut. Auto. Ins. Co., 27 Misc 3d 1228[A], 2010 NY Slip Op 50950[U] [Civ Ct, Kings County 2010].) The same should hold true here.
Plaintiff, as an applicant for no-fault benefits seeking payment for its services, knew or should have known that it needed to provide routine verification, in the form of a letter of medical necessity, before its claim would be processed by defendant. Although it apparently received two written requests for such verification, plaintiff never reminded defendant that the notices should have gone to IIP If plaintiff forwarded the verification *755 notices to IIP, that firm did nothing, either. Both had the opportunity to act. Neither raised a timely objection to the requests. The verification was never provided. The claim remained premature. (See e.g. Alev Med. Supply, Inc. v Eveready Ins. Co., 37 Misc 3d 137[A], 2012 NY Slip Op 52184[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2012].) Notwithstanding defendant’s failure to also send copies of the verification requests to IIP, plaintiff, not defendant, bears the primary blame for its own predicament.
In closing, under current case law precedent, medical providers have a duty to promptly respond to verification requests which are arguably improper. As appellate courts have noted in other contexts,
“[I]t would be incongruous to conclude that the insurance regulation regarding follow-up verification, or any other statute or rule, warrants a result which would, in effect, penalize an insurer who diligently attempts to obtain the information necessary to make a determination of a claim, and concomitantly, rewards a plaintiff who makes no attempt to even comply with the insurer’s requests.” (Triangle R Inc. v Praetorian Ins. Co., 30 Misc 3d 129[A], 2010 NY Slip Op 52294[U], *2 [App Term, 1st Dept 2010], quoting Infinity Health Prods., Ltd. v Eveready Ins. Co., 67 AD3d 862, 865 [2d Dept 2009].)
Consequently, the insurer’s failure to send copies of its requests to the provider’s attorneys is immaterial. The action is premature, and accordingly must be dismissed.