OPINION OF THE COURT
Michael A. Ambrosio, J.
In this action, plaintiff Felix Rivera asserts causes of action for retaliatory and discriminatory discharge under the New York State Human Rights Law (Executive Law § 296 et seq.) (NYSHRL) and the New York City Human Rights Law (Administrative Code of City of NY § 8-101 et seq.) (NYCHRL) against defendant Lutheran Medical Center (LMC) and Myles Davis, a vice-president of LMC. Plaintiff alleges he was terminated by LMC in February 2003 because of his “association” with Laura Byrnes, his sister-in-law, who sued LMC in 1999 claiming violation of her civil rights while an inpatient at LMC in July 1996. Byrnes settled her lawsuit with LMC in December 2001. Plaintiff claims retaliatory discharge based upon his involvement in the Byrnes lawsuit. Defendants now move pursuant to CPLR 3211 (a) (7) to dismiss plaintiff’s retaliatory discharge claims under both the NYSHRL and the NYCHRL.
*180 Plaintiff was an employee who worked at LMC as a housekeeper from approximately January 1993 to January 28, 2003 when he was suspended then subsequently terminated on February 3, 2003. Byrnes, plaintiffs deaf sister-in-law, was admitted to LMC on July 13, 1996 following an attempted suicide. According to Byrnes’ complaint, LMC failed to provide her with a sign language interpreter in order to properly evaluate and treat her during her five-day inpatient stay at LMC. Plaintiffs wife, Irene Rivera, repeatedly told LMC to provide her sister with an interpreter but LMC never did. Plaintiff’s wife confronted Davis about this issue at an LMC administrator’s meeting but was told by Davis to “shut up and sit down” (complaint 1111 19-20). Byrnes brought a civil rights lawsuit against LMC in 1999 which was settled for $200,000 in December 2001.
On January 28, 2003, plaintiff showed Evelyn Gracias, a worker at LMC, a sexually suggestive cartoon (complaint 1i 70). According to plaintiff, Gracias had previously brought erotic chocolates into the workplace and sold them at LMC. She also previously showed plaintiff similarly sexually suggestive materials and made sexually suggestive comments (complaint H 71). Plaintiff was terminated by LMC for “sexual harassment” because of his conduct with Gracias. Plaintiff claims no other LMC employee had been immediately terminated for claims of sexual harassment for similar incidents and that LMC failed to abide by its “progressive discipline” policy in meting out an appropriate sanction for what plaintiff claims was a minor transgression (complaint HH 79-92). According to plaintiff, other employees committed much more severe acts without being terminated (complaint If 104).
In reviewing a motion to dismiss for failure to state a claim under CPLR 3211 (a) (7), the court must accept the allegations of the complaint as true and accord plaintiff the benefit of every possible favorable inference and determine only whether the facts as alleged fit within a cognizable legal theory (Polonetsky v Better Homes Depot, 97 NY2d 46, 54 [2001] [motion must be denied if “from (the) four corners (of the pleadings) factual allegations are discerned which taken together manifest any cause of action cognizable at law”]). “So liberal is th[is] standard . . . that the test is simply £ “whether the proponent of the pleading has a cause of action” ’ not even £ “whether he has stated one” ’ ” (Wiener v Lazard Freres & Co., 241 AD2d 114, 120 [1st Dept 1998]).
*181 Plaintiffs claims under the NYSHRL and the NYCHRL are based upon his association with Byrnes. He asserts that LMC retaliated against him by discharging him for supporting Byrnes’ lawsuit against LMC and aiding Byrnes while an inpatient at LMC. The plain language of the NYSHRL clearly indicates that it only prohibits discrimination against individuals who are themselves disabled and was not intended to provide a cause of action for disability association discrimination (Bartman v Shenker, 5 Mise 3d 856 [2004]). That being the case, plaintiff’s claim under the NYSHRL must be dismissed.
However, Administrative Code § 8-107 (20) explicitly grants standing to sue to those who have been discriminated against by virtue of their association with a disabled individual (Bartman v Shenker, supra; Abdel-Khalek v Ernst & Young, LLP, 1999 WL 190790, 1999 US Dist LEXIS 2369 [SD NY 1999]). Defendants argue, however, that that casual link between the protected conduct (supporting Byrnes’ lawsuit) and the adverse action (termination from LMC) is too tenuous to support a cause of action for retaliatory discrimination under the NYCHRL. LMC claims the four-year lapse between the filing of the Byrnes lawsuit and plaintiffs discharge does not reasonably result in the inference that plaintiffs association with Byrnes was the reason for his termination.[1]
Plaintiff has sufficiently established a cause of action under the NYCHRL. The temporal proximity between the purported protected activity and the adverse action is but one factor to consider in determining the sufficiency of the pleadings. According the plaintiff the benefit of every possible favorable inference, and taking into consideration his claim in the complaint of clearly disparate adverse treatment, the allegations are suf *182 ficient for pleading purposes to reasonably infer he was terminated in retaliation for his association with Byrnes. The defendants’ motion to dismiss his claim under the NYCHRL is at best premature since discovery is clearly required under the circumstances (see CPLR 3211 [d]).
Next, plaintiff moves to disqualify Morgan Lewis & Bockius, LLR defendants’ law firm, from representing defendants and former and current LMC employees whom LMC has identified as witnesses relating to this action. Plaintiff claims, inter alla, that Morgan Lewis violated the Code of Professional Responsibility in offering to represent, free of charge, former and current LMC employees who are nonparty witnesses in this case.
On April 11, 2006, the court issued a preliminary conference order which required the parties to, among other things, “exchange names and addresses of all witnesses within 30 days.” Pursuant to that order on May 11, 2006, Morgan Lewis identified three witnesses: (i) Tom DeLucia, vice-president, facilities management; (ii) Stan Giovanniello, employee and labor relations; and (iii) Evelyn Gracias, medical assistant. Morgan Lewis gave its address as the contact information for these witnesses. By letters dated November 20, 2006 and November 28, 2006, plaintiffs counsel, Alan J. Rich, requested that Morgan Lewis provide identifying information of witnesses including complete addresses and telephone numbers rather than listing the address in “c/o Morgan Lewis.”
On December 26, 2006, in response to plaintiffs interrogatory requesting defendants to identify witnesses, Morgan Lewis identified four additional witnesses: John Arnott, former LMC director of building services; Stephen Branch, former LMC evening supervisor, housekeeping; Olga Alvarez, LMC medical assistant; and Carlos Arrington, LMC housekeeper. Again, Morgan Lewis requested that all contact by plaintiff proceed through Morgan Lewis.
It is undisputed that at LMC’s behest Morgan Lewis contacted all of the witnesses listed above (in the May 11, 2006 and December 26, 2006 responses) and offered to represent them in this matter at LMC’s expense (see affidavit of Jennifer L. Kronick, Esq., May 1, 2008, 1Í 7). According to Morgan Lewis, all of the witnesses orally agreed to be represented by Morgan Lewis *183 sometime in 2006 and the witnesses subsequently executed retainer letters in 2007. [2]
Plaintiff asserts Morgan Lewis solicited these witnesses as clients in violation of Code of Professional Responsibility DR 2-103 (a) (1) (22 NYCRR 1200.8 [a] [1]) in order to prevent plaintiff from exercising his right to informally interview these witnesses in accordance with Niesig v Team I (76 NY2d 363 [1990]). Plaintiff also claims, among other things, that Morgan Lewis has an inherent conflict of interest in representing LMC and the witnesses and therefore violated DR 5-105 (22 NYCRR 1200.24) in agreeing to represent the former and current LMC employees.
DR 7-104 (a) (1) (22 NYCRR 1200.35 [a] [1]) provides in pertinent part that
“[d]uring the course of the representation of a client a lawyer shall not . . . [c]ommunicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by a lawyer in that matter unless the lawyer has the prior consent of the lawyer representing such other party or is authorized to do so.”
In Niesig, the Court of Appeals considered the implications of that rule and whether employees of a corporation being sued were considered “parties” within the meaning of DR 7-104 (a) (1). The plaintiff in Niesig moved after commencement of the action for an order permitting counsel to conduct a private interview with those employees of a corporate third-party defendant who witnessed the accident. The court construed the term “party” as it is used in the disciplinary rule “to include corporate employees whose acts or omissions in the matter under inquiry are binding on the corporation (in effect, the corporation’s ‘alter ego’) or imputed to the corporation for purpose of its liability, or employees implementing the advice of counsel” (Niesig at 374) and to exclude “employees who were merely witnesses to an event for which the corporate employer is sued” (id. at 375). The Court ultimately held that none of the employees was a “party” pursuant to DR 7-104 (a) (1) and thus the motion to allow plaintiff to informally interview the *184 corporation’s current employees was properly granted. The Court underscored the importance of informal discovery practices in litigation — in particular, private interviews of fact witnesses that have the potential to streamline discovery and foster the prompt resolution of claims (Niesig, 76 NY2d at 370). A blanket ban on informal interviews of corporate employees was undesirable because it would:
“[C]lose[ ] off avenues of informal discovery of information that [might] serve both the litiga[tion] and the entire justice system by uncovering relevant facts, thus promoting the expeditious resolution of disputes. Foreclosing all direct, informal interviews of employees of the corporate party unnecessarily sacrifices the long-recognized potential value of such sessions . . . Costly formal depositions that may deter litigants with limited resources, or even somewhat less formal and costly interviews attended by adversary counsel, are no substitute for such off-the-record private efforts to learn and assemble, rather than perpetuate information” (76 NY2d at 372).
Under Niesig, plaintiff would have been entitled to informal interviews with Arnott, Branch, Alvarez and Arrington had Morgan Lewis not solicited them and retained them as clients. DeLucia, Giovanniello and Gracias are each considered a “party” under DR 7-104 (a) (1) and Niesig and would therefore not be subject to informal interviews by plaintiffs counsel. The central issue before the court is whether Morgan Lewis should be disqualified from representing Arnott, Branch, Alvarez and Arrington due to a conflict of interest (see DR 5-105) and/or because Morgan Lewis violated the Code of Professional Responsibility by improperly soliciting them as clients (see DR 2-103 [a] [1]). Disqualification of an attorney is a matter which rests within the sound discretion of the court (see Fischer v Deitsch, 168 AD2d 599 [1990]). A party is entitled to be represented in ongoing litigation by counsel of his own choosing, a valued right which should not be abridged absent a clear showing that disqualification is warranted and the movant bears the burden on the motion (see S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp., 69 NY2d 437 [1987]). The plaintiff asserts that Morgan Lewis’s representation of both LMC and the nonparty witnesses violated DR 5-105 of the Code which addresses attorney representation of clients with interests that may conflict. DR 5-105 provides that joint representation is permitted even if *185 the lawyer’s professional judgment “will be or is likely to be adversely affected” provided that: (1) “a disinterested lawyer would believe that the lawyer can competently represent the interest of each [client]” and (2) each client consents to the joint representation after full explanation of “the advantages and risks involved” (DR 5-105 [a], [c] [22 NYCRR 1200.24 (a), (c)]). Plaintiff, at this stage has provided nothing more than mere conclusory assertions that there is a potential conflict of interest. As such, he has failed to establish this as a basis to disqualify Morgan Lewis (see Olmoz v Town of Fishkill, 258 AD2d 447 [2d Dept 1999]).
That said, the court is troubled to say the least that Morgan Lewis actively solicited the nonparty witnesses in clear violation of DR 2-103 (a) (1) of the Code which states:
“(a) A lawyer shall not engage in solicitation:[3]
“(1) by in-person or telephone contact, or by real-time or interactive computer-accessed communication unless the recipient is a close friend relative, former client or existing client.”
According to Morgan Lewis, the nonparty witnesses were contacted by Morgan Lewis and informed that LMC was offering to have Morgan Lewis represent them on an individual basis in connection with this matter, at LMC’s expense. They were told this was entirely voluntary on their part, and that they would suffer no retaliation if they declined representation or did not wish to otherwise cooperate with LMC’s defense. Each of them “verbally” requested Morgan Lewis’s representation. Retention letters were subsequently forwarded under separate cover (see Kronick off 1i 7).
These witnesses are not parties to the litigation in any sense and there is no chance that they will be subject to any liability. They were clearly solicited by Morgan Lewis on behalf of LMC to gain a tactical advantage in this litigation by insulating them from any informal contact with plaintiff’s counsel. This is particularly egregious since Morgan Lewis, by violating the Code in soliciting these witnesses as clients, effectively did an end run around the laudable policy consideration of Niesig in promoting the importance of informal discovery practices in litigation, in particular, private interviews of fact witnesses. This *186 impropriety clearly affects the public view of the judicial system and the integrity of the court.
Unfortunately, Morgan Lewis has a history in this litigation of improperly thwarting plaintiffs attempts to obtain discovery. For example, Morgan Lewis refused to disclose numerous documents it marked “classified.” Plaintiff was compelled to move to declassify those documents. By order dated March 5, 2007, Honorable Arthur M. Schack[4] granted plaintiffs motion and declassified all of the documents finding after an in camera inspection that the documents in question were “ordinary documents, such as documents relating to the terminations of plaintiff, an insurance policy, and other similar non-confidential documents” (Schack, J., decision and order, Mar. 5, 2007, 1i 1). Justice Schack also issued a conditional preclusion order against defendants for evasive responses to plaintiffs discovery demands. Plaintiffs cross motion to preclude defendants from asserting any affirmative defense that defendant acted for legitimate business reasons with regard to plaintiffs claim of discrimination was conditionally granted unless defendants provided “complete, direct, clear and non-evasive answers, including any responsive documents ... to outstanding discovery requests” (decision and order 1i 3 [emphasis added]).
In light of this history, the court must consider whether Morgan Lewis’s misconduct in soliciting Arnott, Branch, Alvarez and Arrington as clients on behalf of LMC warrants disqualifying them from representing these nonparty witnesses in this litigation. In reaching its decision, the court is guided by Chief Judge Curtin’s decision in United States v Occidental Chem. Corp. (606 F Supp 1470 [WD NY 1985]), who was confronted with a strikingly similar circumstance. The case before Judge Curtin involved a major environmental lawsuit brought by the federal and state government against Occidental for its disposal of toxic waste into Love Canal. Occidental’s attorneys, Wald, Harkrader and Ross of Washington, D.C., and Phillips, Lytle, Hitchcock, Blaine and Huber of Buffalo, New York (Phillips/Wald) informed the court that they planned on sending letters to former employees of Occidental to extend offers to have Phillips/Wald represent them, free of charge, in the event the former employees were asked to appear for depositions. The plaintiffs asked the court to enter an order prohibiting Phillips/Wald from representing any former Occidental employees during the discovery proceedings.
*187 Although the court allowed Phillips/Wald to represent Occidental’s former employees, it enjoined Phillips/Wald and Occidental from sending out any notice of the offer to retain Phillips/Wald as their attorneys. The court concluded that there was an appearance of impropriety in a law firm directly or indirectly mailing offers of legal services to future witnesses. It would have been improper to permit Phillips/Wald to give unsolicited notices of their availability at no cost to prospective clients {see DR 2-103 [a] [1]). Judge Curtin wrote:
“The best way to avoid an appearance of impropriety is to enjoin the mailing of the notice . . . [T]he attorney-client relationship must, if it is established at all, come about at the initial request of the former employees . . . Moreover, the court is unwilling to provide unnecessary encouragement for a method of obtaining legal work which results in one side gaining even a minor tactical advantage” {United States v Occidental Chem. Corp., 606 F Supp at 1477).[5]
The only distinction in this case is the fact that Morgan Lewis already improperly solicited LMC’s current and former employees as clients. In effect, the bell has already been rung. It is significant to this court that Judge Curtin invoked the extraordinary injunctive powers of the court to prevent Phillips/Wald from doing just what Morgan Lewis did in this case. Under these circumstances, Morgan Lewis must be disqualified from representing Arnott, Branch, Alvarez and Arrington due to their misconduct.[6]
Based upon the foregoing, it is hereby ordered, that defendants’ motion to dismiss the complaint pursuant to CPLR 3211 (a) (7) is granted to the extent that plaintiff’s claim of retaliatory/association discrimination pursuant to the NYSHRL is granted; and it is further ordered, that plaintiffs motion to disqualify Morgan Lewis is granted to the extent that Morgan Lewis is disqualified from representing Arnott, Branch, Alvarez *188 and Arrington; and it is further ordered, that Morgan Lewis shall write a letter to Arnott, Branch, Alvarez and Arrington informing them that Morgan Lewis can no longer represent them. The witnesses are of course free to retain counsel of their own choosing should they wish, and it is further ordered, that plaintiffs counsel may contact these witnesses to see if they wish to be informally interviewed and Morgan Lewis is directed pursuant to the preliminary conference order to provide contact information for these witnesses; and it is further ordered, that defendant’s motion to compel discovery which was held in abeyance pending the decision on the disqualification motion is restored to the Part 31 motion calendar to be heard on January 5, 2009, with plaintiffs reply due on or before December 10, 2008.
In all other respects, defendants’ and plaintiffs motions are denied in their entirety.

. In a disability association discrimination case, plaintiff bears the burden of establishing:
“(1) the plaintiff was ‘qualified’ for the job at the time of the adverse employment action;
“(2) the plaintiff was subjected to adverse employment action;
“(3) the plaintiff was known by [his] employer at the time to have a relative or associate with a disability;
“(4) the adverse employment occurred under circumstances raising a reasonable inference that the discrimination of the relative or associate was a determinating factor in the employer’s decision” (Abdel-Khalek v Ernst & Young, LLP, 1999 WL 190790, *4, 1999 US Dist LEXIS 2369, *10 [SD NY 1999]). Defendants claim plaintiff failed to satisfy the fourth element for association discrimination.

. Retainer letters from Morgan Lewis are dated and signed by the witnesses as follows: Gracias, letter dated December 28, 2006, signed on January 2, 2007; Alvarez, letter dated January 2, 2007, signed on January 5, 2007; Giovanniello, letter dated January 2, 2007, signed on January 10, 2007; Branch letter dated January 17, 2007, signed on April 12, 2007; Arnott letter dated January 2, 2007, signed on February 1, 2007.

. “ ‘[S]elicitation’ means any advertisement initiated by or on behalf of a lawyer or law firm that is directed to, or targeted at, a specific recipient or group of recipients . . . the primary purpose of which is the retention of the lawyer or law firm, and a significant motive for which is pecuniary gain” (see DR 2-103 [b]).

. Justice Schack subsequently recused himself from this case.

. With respect to the tactical advantage, the court also observed that “[t]he fact that some tactical advantage might be gained by representing both Gibson [another former employee of Occidental] and Occidental is not lost upon the court. Being a client of Phillips/Wald, counsel for the other parties in this case cannot interview Mr. Gibson on an informal basis without first contacting Phillips/Wald.” (United States v Occidental Chem. Corp. at 1475 [emphasis added].)

. This court also has no alternative but to report Morgan Lewis’s misconduct to the Disciplinary Committee.