OPINION OF THE COURT
Marsha L. Steinhardt, J.
Defendant Brooklyn Hospital Center moves for a protective order precluding plaintiff from conducting the deposition of Debra Ambrose, R.N.; or in the alternative, precluding plaintiff from asking Debra Ambrose, R.N. or any other former or present employee of Brooklyn Hospital Center any questions at deposition or at trial regarding this defendant’s procedures where a patient requires a ventilator and, directing that plaintiff turn over any notes, memos, or recordings of conversation with Debra Ambrose, R.N. on the grounds that plaintiff’s counsel violated former Code of Professional Responsibility DR 7-104 (a) (1) (now Rules of Professional Conduct [22 NYCRR 1200.0] *630 rule 4.2 [a]) by communicating with Debra Ambrose, R.N. Plaintiff opposes the motion.
Plaintiff cross-moves for an order disqualifying counsel for Brooklyn Hospital Center from representing certain nonparty witnesses on the grounds that the attorneys violated former Code of Professional Responsibility DR 2-103 (a) (1) (22 NYCRR 1200.8 [a] [1]) (now Rules of Professional Conduct [22 NYCRR 1200.0] rule 7.3) by improper solicitation. Defendant Brooklyn Hospital Center submits opposition.
Defendant Spencer Lubin, M.D. moves for a protective order preventing disclosure of home and cell telephone records. Plaintiff opposes the motion.
In this medical malpractice action, plaintiff alleges that Mr. Gales, a ventilator-dependant patient at the defendant Brooklyn Hospital Center, was removed from a mechanical ventilator at approximately 8:00 p.m. on August 12, 2008 for transport to the operating room for a tracheostomy. He was manually bagged during the transport by a first-year resident. Plaintiff claims that when the patient arrived at the operating room (OR) holding area, no anesthesiologist was available for the surgery. There is testimony that the resident attempted to bring the patient to the post-anesthesia care unit (PACU) but was denied access because the patient was not post-operative. Plaintiff further claims that at approximately 9:15 p.m. a code was called when the patient was found without a pulse in the OR holding area. The patient was pronounced dead shortly thereafter by the Code Team that attempted resuscitation.
In her bill of particulars, plaintiff alleges, inter alia, that Brooklyn Hospital was negligent in failing to give the patient proper monitoring, supervision and nursing care; in failing to render appropriate care in the handling and monitoring of the patient; in failing to provide policies and procedures to protect the safety of patients such as decedent; in failing to adhere to or monitor compliance with existing procedures and policies; in failing to set and ensure appropriate standards of care; in performing nursing care and follow-up care improperly, incompetently and dangerously; in failing to ensure that an anesthesiologist was present to receive and treat decedent for surgery; and in causing further harms and injuries out of and as a result of the actions and inactions of defendant, its servants, agents and/or employees.
At this stage of the litigation a number of depositions have taken place. As to the claims against the hospital, the deposition *631 of Oswald Bradshaw, head nurse for the OR holding area, took place on July 19, 2011. Nurse Bradshaw, having retired approximately two years ago, appeared for deposition pursuant to subpoena. On June 20, 2011, at around the time the subpoena was served, Nurse Bradshaw was interviewed ex parte by a private investigator retained by plaintiffs attorney’s firm. By letter dated July 6, 2011, Brooklyn Hospital Center objected to a notice of deposition served upon its attorneys without a copy of the subpoena served upon Nurse Bradshaw. The letter advised plaintiffs attorney that the attorneys for Brooklyn Hospital Center were retained by Nurse Bradshaw to represent him with respect to said deposition. The letter also requested that plaintiffs counsel refrain from contacting Nurse Bradshaw and advised counsel to direct all inquiries in his regard to the attorneys for Brooklyn Hospital Center. Plaintiffs response to such letter is noted and annexed as an exhibit to the cross motion.
Notwithstanding, this motion involves the circumstances surrounding the deposition of Debra Ambrose, a registered nurse presently employed by Brooklyn Hospital Center. On or about June 28, 2011, counsel for plaintiff sent a notice of deposition of Debra Ambrose to the attorneys for Brooklyn Hospital, and on or about July 5, 2011, a subpoena was served upon Debra Ambrose noticing her deposition for August 1, 2011. Upon receipt of the subpoena, Nurse Ambrose called plaintiffs attorneys to inquire about the subject matter involving the subpoena. In an affidavit annexed to Brooklyn Hospital’s motion, Nurse Ambrose states that she initially spoke to a woman whom she believed to be a secretary or a receptionist at plaintiffs attorney’s office and was thereafter transferred to speak to the attorney. It is uncontroverted that Nurse Ambrose spoke to plaintiffs counsel who asked her about the procedures or policy for admitting a patient to the PACU at Brooklyn Hospital. Nurse Ambrose responded to the inquiry. Nurse Ambrose states in her affidavit that plaintiffs counsel did not inquire if she was presently an employee of Brooklyn Hospital.
Rules of Professional Conduct (22 NYCRR 1200.0) rule 4.2 (a) reads:
“In representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior *632 consent of the other lawyer or is authorized to do so by law.”
The Court of Appeals in Niesig v Team I (76 NY2d 363, 374 [1990]) held that former DR 7-104 (A) (1) prohibits direct communication with certain current employees of a party including “corporate employees whose acts or omissions in the matter under inquiry are binding on the corporation (in effect, the corporation’s ‘alter egos’) or imputed to the corporation for purposes of its liability, or employees implementing the advice of counsel.” In that case, the plaintiff in a personal injury litigation sought to have his attorney privately interview a corporate defendant’s employees who witnessed the accident. The Court undertook to answer the question of whether employees of a corporate party are also considered “parties” under former DR 7-104 (A) (1). In discussing possible tests to define “a party,” the Court acknowledged that to limit a “party” to include only those in senior management who control the company “wholly overlooks the fact that corporate employees other than senior management also can bind the corporation.” (Id. at 373.) The Court found that the test best balancing the competing interests is the one that defines a party to include employees whose acts or omissions are binding on the corporation. The Court added that this test would permit direct access to employees who were merely witnesses to an event for which the corporate employer is sued. (Id. at 375.)
The Niesig Court emphasized the importance of informal interviews where appropriate to potentially streamline discovery and promote expeditious resolution of disputes. The Court also noted that its decision was limited by the facts before it and recognized that there are questions not raised in that case that will yet have to be answered. The Court added a cautionary note that it was assumed that attorneys conducting such interviews “would make their identity and interest known to interviewees and comport themselves ethically.” (Id. at 376.)
In Muriel Siebert & Co., Inc. v Intuit Inc. (8 NY3d 506 [2007]), the plaintiffs attorneys interviewed a former employee of the defendant corporation in a breach of contract litigation. Upon learning of the interview, the defendant’s attorney moved to disqualify plaintiffs counsel from the case. The Court of Appeals, noting that the individual in that case had no power to bind the former employer in the litigation, approved of the private interview and denied the disqualification. The Court reiterated the Niesig Court’s policy considerations regarding informal interviews including facilitating counsel to unearth *633 relevant facts and serving to foster prompt resolution of claims. (Id. at 511.)
In furtherance of the holdings in Niesig and Siebert, this court finds that the facts and circumstances of this case preclude ex parte interviews of medical personnel associated with Brooklyn Hospital Center. In this case, Nurse Ambrose is a witness whose acts or omissions may be binding on the hospital. As an employee of defendant Brooklyn Hospital Center involved in the events leading up to the death of Mr. Gales, the acts of Nurse Ambrose or her failure to act may be vicariously imputed to the hospital pursuant to the principles of agency, vicarious liability and respondeat superior. “Business corporations are liable under the doctrine of respondeat superior for the torts of their employees committed within the scope of the corporate business and, as with any other corporation, professional service corporations are similarly vicariously liable for the torts of their servants.” (Poplawski v Gross, 81 AD3d 801, 802-803 [2d Dept 2011]; Connell v Hayden, 83 AD2d 30, 46 [1981]; see Keitel v Kurtz, 54 AD3d 387, 392 [2008]; Monir v Khandakar, 30 AD3d 487, 489 [2006].) Furthermore, the employee allegedly committing the tortious conduct is not a necessary party in an action against an employer based upon the doctrine of respondeat superior. (Trivedi v Golub, 46 AD3d 542 [2d Dept 2007].)
Additionally, the allegations against Brooklyn Hospital Center include a failure to follow procedure and protocol in transporting the decedent to the operating room. It is well known that the violation of a protocol may constitute some evidence of negligence. (See Juseinoski v New York Hosp. Med. Ctr. of Queens, 18 AD3d 713 [2d Dept 2005]; Haber v Cross County Hosp., 37 NY2d 888 [1975]; Kadyszewski v Ellis Hosp. Assn., 192 AD2d 765 [1993]; Hughson v St. Francis Hosp. of Port Jervis, 96 AD2d 829 [1983].) Moreover, the hospital’s failure to abide by its own rule is some evidence of negligence and a basis for the imposition of liability upon the hospital. (See Haber v Cross County Hosp., supra; Danbois v New York Cent. R.R. Co., 12 NY2d 234, 239 [1963].) Administrative work is part of the service that a hospital provides and for which the hospital is responsible. (See Haber v Cross County Hosp., supra; Sutherland v New York Polyclinic Med. School & Hosp., 273 App Div 29, 30-31 [1947], affd 298 NY 682 [1948], rearg denied 298 NY 794 [1948].) Applying this principle, the Second Department affirmed the denial of a summary judgment motion where the hospital failed to show, prima facie, that it did not depart from *634 good and accepted medical practice by failing to enforce and/or comply with its own policy. (Fiorino v North Shore Univ. Hosp. at Glen Cove, 78 AD3d 1116 [2d Dept 2010].)
In like manner, statements from Nurse Ambrose regarding an alleged failure to follow protocol may bind the hospital. Here, the former and present employees, including Nurse Ambrose, are witnesses not only of the facts but also to the policy and procedures the hospital had in place at the time the incident involving Mr. Gales took place. The deposition of Nurse Ambrose is the vehicle through which those issues would be explored while ensuring that the interests of the parties are protected. Instead, such inquiry took place outside the presence of counsel for the hospital albeit that such information may potentially bind the hospital in liability. In the ex parte communication, a necessary party was not present to protect its interests.
Plaintiff’s attorney argues that Nurse Ambrose merely recorded the Code Team’s activities during the code and witnessed the events that transpired. As such, he argues, her testimony cannot bind the hospital. It is noted that plaintiffs argument that Nurse Ambrose’s testimony is sought only as a fact witness to the code is belied by the very questions posed during the interview regarding hospital policy and procedures. This communication was more than mere fact-finding.
Furthermore, the policy considerations underlying the Court of Appeals decisions are not at play in the instant case as the formal depositions of Nurse Ambrose and other hospital personnel continue to be sought by plaintiff. Thus, the informal questioning of Nurse Ambrose was not intended to be in lieu of the formal format and was not meant as a fact-finding session to streamline discovery. In short, this court finds that the subject interview is not permitted and does not further the policy stated by the Niesig and Siebert Courts. Such ex parte communication as occurred here must not take place again.
Lastly, the rules of discovery set forth in the CPLR, in particular article 31, govern formal discovery and provide the vehicles through which information and evidence is gathered. The deposition or examination before trial is one such vehicle and is a more than adequate means to obtain the sought-after information. The plaintiff is therefore directed to limit communication with potential medical witnesses to formal depositions. In light of the fact that a communication regarding policy and procedures already transpired with Nurse Ambrose, plaintiff’s *635 counsel is directed to limit the questions posed to this witness at her deposition to only her observations and her notes in the hospital chart, if any. Therefore, the motion of Brooklyn Hospital Center for a protective order is granted only to the extent noted herein.
Plaintiff’s cross motion seeks to disqualify the firm representing Brooklyn Hospital Center from representing Nurse Bradshaw, Nursing Supervisor Myrna Belgrave-Sigua, Nurse Ambrose and Respiratory Therapist Cooper for improper solicitation of witnesses in disregard of former DR 2-103 (A) (1) (now Rules of Professional Conduct [22 NYCRR 1200.0] rule 7.3).
Rules of Professional Conduct (22 NYCRR 1200.0) rule 7.3 (a) (1) provides in pertinent part that “[a] lawyer shall not engage in solicitation ... by in-person or telephone contact, or by realtime or interactive computer-accessed communication unless the recipient is a close friend, relative, former client or existing client.”
Plaintiff bases his argument on the authority of Rivera v Lutheran Med. Ctr. (22 Misc 3d 178 [2008], affd 73 AD3d 891 [2d Dept 2010]). In that case, the Second Department affirmed the lower court’s decision to disqualify defendant’s attorney from representing the hospital’s former employees in an action claiming retaliatory and discriminatory discharge. The lower court found that the witnesses were not a party to the litigation and were clearly solicited to gain a tactical advantage by insulating them from any informal contact with plaintiffs counsel. The court noted that defendant’s attorneys had a history of improperly thwarting plaintiffs attempts to obtain discovery.
Counsel for Brooklyn Hospital states that Brooklyn Hospital Center, pursuant to its self-insurance plan, provides legal representation to its present and former employees with respect to allegations of malpractice within the scope of their employment. They claim that former employees, Nurse Bradshaw and Nursing Supervisor Myrna Belgrave-Sigua, and present employees, Nurse Ambrose and Respiratory Therapist Cooper, all have requested to be represented by the firm representing Brooklyn Hospital Center.
In this regard, the court finds that the representation of the former and present employees of defendant Brooklyn Hospital Center by its attorneys is not in violation of rule 7.3. Brooklyn Hospital Center has established, based on its insurance protocol, that it has not solicited witnesses in the context of rule 7.3. On this basis and on the aforementioned discussion regarding *636 vicarious liability, this court finds that there has been no violation of the Rules of Professional Conduct. Counsel for Brooklyn Hospital Center may continue to represent the hospital’s present and former employees in this action. Accordingly, plaintiffs cross motion is denied.
Defendant Dr. Lubin moves for a protective order preventing disclosure of his telephone records. Dr. Lubin testified in his deposition that he used his home telephone to call anesthesiologist Dr. St. Felix on his cell phone to request his return to Brooklyn Hospital Center and administer anesthesia to Mr. Gales for the procedure. Dr. Lubin further stated that Dr. St. Felix called back from the hospital advising that the patient had coded. Plaintiff claims that Dr. Lubin’s home and cell phone records would establish the time he called Dr. St. Felix in response to being notified by the hospital that an anesthesiologist was not available for Mr. Gales’ procedure and the time of Dr. St. Felix’ call from the hospital.
It is axiomatic that “[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof’ (CPLR 3101 [a]; Northway Eng’g v Felix Indus., 77 NY2d 332, 335 [1991]). The words “material and necessary” as used in the statute are to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist in the preparation for trial. (Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406-407 [1968].) Telephone records for both home and cell phones have been found to be material and necessary and exchanged in certain situations. (See Ford v Rector, ChurchWardens, Vestrymen of Trinity Church in the City of N.Y., 81 AD3d 502 [1st Dept 2011].)
In this case, the facts regarding the presence or lack thereof of an anesthesiologist in the OR is relevant to both the prosecution and defense of this action. In the interest of privacy and to circumscribe the requested discovery to relevant information, the motion for a protective order is decided as follows: Dr. Lu-bin is directed to submit home and cell phone records for August 12, 2008 from 7:00 p.m. to 10:00 p.m. for an in camera inspection on or before April 30, 2012. Dr. Lubin, by his attorneys, is further directed to advise the court of the phone number(s) he used to contact and receive calls from Dr. St. Felix and any other relevant phone numbers. The court, upon inspection of *637 the records, will redact all other information and phone numbers and provide the redacted records to all parties.