Gillespie v Black (2025 NY Slip Op 51394(U))

[*1]

Gillespie v Black

2025 NY Slip Op 51394(U)

Decided on September 3, 2025

Supreme Court, Saratoga County

Kupferman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 3, 2025
Supreme Court, Saratoga County

Kimberly A. Gillespie, individually and as the Executrix of the ESTATE OF JAMES D. GILLESPIE, Plaintiff,

against
Trevor E. Black, M.D., THE SCHUMACHER GROUP OF NEW YORK, INC., NATHAN LITTAUER HOSPITAL AND NURSING HOME, and NATHAN LITTAUER HOSPITAL ASSOCIATION, Defendants.

Index No. EF20201712

George E. LaMarche, III, Esq. 
LaMarche Safranko Law PLLC 
987 New Loudon Road
Cohoes, New York 12047
Attorneys for the Plaintiff
Richard R. Maguire, Esq.
Monique B. McBride, Esq.
Burke, Scolamiero & Hurd, LLP 
7 Washington Square, P.O. Box 15085
Albany, New York 12212
Attorneys for the Defendants,
Nathan Littauer Hospital and Nursing Home
and Nathan Littauer Hospital Association

Richard A. Kupferman, J.

In this action, the plaintiff has alleged that the defendant hospital violated its own nursing policies and procedures ("policies") and that the violations should constitute "some evidence of negligence." As the case is now approaching trial, the hospital defendants have requested a pre-trial ruling to preclude the plaintiff from offering the policies into evidence and eliciting [*2]testimony regarding them.[FN1]

The violations complained of concern the alleged failure by the nursing staff to properly recognize and diagnose the decedent's medical condition and symptoms. The first policy concerns patients with "chest pain or related symptoms of a possible myocardial infarction." This policy provides that "All patients presenting with possible cardiac-related chest pain should be assumed to be having a possible myocardial infarction, and a possible candidate for thrombolysis, until proven otherwise." It further provides that "Other symptoms [that] may be the chief complaints of patients with a myocardial infarction . . . [include] shortness of breath." The second policy concerns patients with signs and symptoms of "chest pain" and "dyspnea," as well as conditions such as "hives," "hyperglycemia," "fever," "stroke," "poisoning," "soar throat," "dysuria," "miscarriage," and "abuse."
The case law relied upon by the plaintiff is factually inapposite to the facts of this case. The legal rule sought to be applied by the plaintiff originates from actions in negligence (see e.g. Danbois v New York Cent. R.R. Co., 12 NY2d 234, 239 [1963]; Admissibility in evidence of rules of defendant in action for negligence, Annotation 50 ALR2d 16). While this legal rule has been applied to hospitals, its application has been limited to circumstances where the acts complained of as negligence do not require the exercise of professional skill and knowledge (see Haber v Cross County Hosp., 37 NY2d 888, 889 [1975]). Rather, they have concerned common-sense precautions adopted by a hospital requiring only administrative action to implement (see id). Such acts have included for instance the alleged negligent failure to comply with rules regarding the use of bed rails, the questioning of family members about their consent for an autopsy, the review pathology slides prior to performing additional surgery, the transporting of a patient to the operating room, and the use of a specific flow rate when administering substances into a patient's body (see e.g. Liguori v Yerger, 197 AD3d 1108 [2d Dept 2021]; Fiorino v North Shore Univ. Hosp. at Glen Cove, 78 AD3d 1116 [2d Dept 2010]; Juseinoski v New York Hosp. Med. Ctr. of Queens, 18 AD3d 713 [2d Dept 2005]; Kadyszewski v Ellis Hosp. Assn., 192 AD2d 765 [3d Dept 1993]; Dixon-Gales v Brooklyn Hosp. Ctr., 35 Misc 3d 676 [Sup Ct, Kings County 2012]). 
Here, in contrast, the alleged violations (i.e., the failure to properly assess medical conditions and symptoms) are not as straightforward or simplistic as the rules discussed above. Determining whether a patient has a possible medical condition is certainly not a matter involving simple negligence upon which "the lack of due care may be discerned by the trier of fact on the basis of common knowledge" (see 8 Bender's Forms of Pleading § 114.01 [Bender 2025]). Rather, the alleged violation at issue here concerns professional judgment and will require expert proof (specialized skill and knowledge) for a jury to understand (see Harrington v St. Mary's Hosp., 280 AD2d 912, 912 [4th Dept 2001] [improper assessment of a patient's condition]). In cases such as this, the claim sounds in medical malpractice and the proof "must conform to the evidential rules long invoked in such a case" (Mossman v Albany Medical Center Hospital, 34 AD2d 263, 264 [3d Dept 1970]; see also 8 Bender's Forms of Pleading § 114.01 [distinguishing malpractice from simple negligence]; 2 Warren's Negligence in the New York [*3]Courts § 49.10 [Bender 2025]).[FN2]

Further, unlike in the Liguori case, the medical providers here did not make any express findings or diagnosis upon which a jury could infer that the policies applied (see Liguori, 197 AD3d at 1108 [where a medical decision was made to treat the patient using CT contrast media, thereby requiring the radiology technician to follow the hospital's rules for administering the substance into the patient's hand]). To the contrary, the nurses and treating physician here allegedly failed to properly assess and diagnose the decedent as having cardiac related "chest pain" and "dyspnea."
Nor has the plaintiff submitted any factual evidence that would permit a reasonable juror to conclude based on common knowledge (rather than expert testimony) that the decedent had the symptoms and medical conditions for which the policies applied (e.g., "chest pain" or "dyspnea"). The policies, for example, do not define these conditions or provide the criteria or procedure for making such medical finding or diagnosis. Although the first policy also applies when the patient has a "chief complaint" of "shortness of breath," the policy similarly fails to explain the criteria or procedure for characterizing a symptom as a "chief complaint." Moreover, the "chief complaint" of the decedent is identified in the medical records as "rib pain" and "chest wall pain" rather than "chest pain." 
Further, the decedent did not complain to anyone at the hospital about any "chest pain." Rather, he initially informed the hospital that he was experiencing pain in his upper left back and rib. The triage nurse further reported his pain as concerning his "left sided rib." She considered the chief complaint as "rib pain" and declined to select "chest pain" from the options because she did not consider this to be a "chest pain complaint." The treating physician further noted the chief complaint as "left lateral chest wall pain" rather than as "chest pain." Moreover, in considering the facts of this case, the parties' experts disagree about whether the decedent was experiencing cardiac related "chest pain" or other symptoms of a possible myocardial infarction.
Similarly, the medical providers did not make any finding or diagnosis of "dyspnea." Rather, the triage nurse and the treating physician examined the decedent and found that his lungs and breathing were clear and normal. Another nurse further considered his breathing sounds to be "clear, but a little faint." As the medical providers did not find that the decedent had "dyspnea" or diagnose him with this medical condition, the alleged failure of the nurses to apply the policies for "dyspnea" was not a negligent act.
Further, while the medical records contain the term "exertional dyspnea" (shortness of breath on exertion), the plaintiff has failed to provide any foundation (despite multiple depositions on the policies) that the policy for "dyspnea" applied to patients with "exertional dyspnea," and that this policy applied despite medical findings that the decedent did not have "dyspnea," including the findings made by the triage nurse and treating physician that the decedent's lungs and breathing were clear and normal.
In any event, even if the alleged violations could be considered as "some evidence of [*4]negligence" for the claims based on medical malpractice, the probative value of this evidence is limited and outweighed by several other considerations (see 1 Bender's New York Evidence § 106.03 [Bender 2025]; 2 New York Trial Guide § 22.50 [Bender 2025]; 1 New York Evidence Courtroom Manual Chapter 4-3 [Bender 2024]; Prince, Richardson on Evidence § 4-103 [Farrell 2008]). As explained above, the alleged policy violations essentially concern the misdiagnosis or improper assessment of the decedent's medical condition and symptoms. While the plaintiff contends that the polices may be considered as "some evidence" in support of her claims, the plaintiff may establish her claims more directly by submitting expert testimony regarding a deviation from the standard of care and proximate causation. If a jury finds a misdiagnosis or improper assessment of the decedent's medical condition, for example, this will itself establish a deviation from the standard of care.
In addition, the introduction of the policies and the plaintiff's reliance on them as "some evidence of negligence" would confuse the jury and distract them from the main issues in the case regarding the standard of care, the alleged deviation, and proximate causation. The jury could also misunderstand the expert testimony if there are differences between the standard of care and the procedures in the policies. The plaintiff's reliance on the alleged violations of the policies would also cause unreasonable delay, as several additional issues would be interjected into the case, thereby further distracting the jury. Several witnesses would have to testify regarding the terms of the policies and their applicability; whether the physician's involvement in the care rendered the policies inapplicable; whether the nurses as a matter of policy, custom, and/or practice would have opted out of the polices (based on the physician's supervision) if they had determined that the decedent had "chest pain" or "dyspnea"; whether any differences exist between the standard of care and the care required under the policies; and the significance of any such differences.[FN3]

Accordingly, the Court finds that the plaintiff should be precluded at the trial from introducing the policies or eliciting testimony about them on the issues discussed above. Notwithstanding, the record is not fully developed to determine the admissibility of this evidence if offered for another reason. To the extent the plaintiff intends to rely on the policies as relevant for some other reason or as part of a claim for simple negligence, the plaintiff is directed within the next 30 days to make such an offer of proof and particularize the alleged violations (see e.g. Hughson v St. Francis Hosp. of Port Jervis, 96 AD2d 829 [2d Dept 1983] [holding that hospital policies may be relevant for other reasons, especially if certain facts are in dispute]). The defendants may serve any responsive papers within 30 days after receipt of the plaintiff's submission.
The Court has considered the parties' remaining contentions and finds them to be either academic or unpersuasive.
It is therefore,
ORDERED, that the hospital defendants' motion in limine (Motion No. 5) is hereby GRANTED to the extent set forth above.
This constitutes the Decision and Order of the Court. No costs are awarded to any party. The Court is uploading the original for filing and entry. The Court further directs the parties to serve notice of entry of this Decision and Order in accordance with the Local Protocols for Electronic Filing for Saratoga County.
So-Ordered.
Dated: September 3, 2025
at Ballston Spa, New York
HON. RICHARD A. KUPFERMAN
Justice Supreme Court
Enter.
Papers Considered: NYSCEF Dkt. Nos. 239-254 (Motion No. 5); 224 (SJ Decision); 78-95, 131-213, 218-222 (SJ Submissions)

Footnotes

Footnote 1:The relevant facts regarding this case are set forth in this Court's prior decision dated November 20, 2024 (see NYSCEF Dkt. No. 224).

Footnote 2:Further, the plaintiff may not pursue a claim in negligence based on the hospital's alleged failure to train the nurses to properly diagnose and assess the decedent's conditions/symptoms given the hospital's vicarious liability for the conduct of its nurses acting within the scope of their duties (see McCarthy v Mario Enters., Inc., 163 AD3d 1135, 1137 [3rd Dept 2018]; Rossetti v Board of Educ., 277 AD2d 668, 670 [3d Dept 2000]).

Footnote 3:For cases holding that the violation of an internal rule cannot be considered evidence of negligence where the rule requires a standard that transcends reasonable care, see Gilson v Metropolitan Opera, 5 NY3d 574, 577 (2005); Sherman v Robinson, 80 NY2d 483, 489 n 3 (1992); Clarke v NYC Transit Auth., 174 AD2d 268, 275-276 (1st Dept 1992). See also 2 Bender's New York Evidence § 124.05[10] [2025] [explaining that "internal rules . . . are not admissible when they prescribe a standard of care that is higher than that imposed by law"]; De Kwiatkowski v Bear, Stearns & Co., 306 F3d 1293, 1311 [2d Cir 2002] [citing examples of cases that "sensibly declined to infer legal duties from internal 'house rules' or industry norms that advocate greater vigilance than otherwise required by law"]).